15534

STATE v. POWELL

(25 S. C. (2d), 479)

September, 1942.

*Mr. W. H. Nicholson,* of Greenwood, S. C., Counsel for Appellant,

*Mr. Hugh Beasley,* Solicitor, of Greenwood, S. C., and *Mr. O. L. Long,* of Laurens, S. C., appeared for the State, Respondent.

April 29, 1943.

MR. ASSOCIATE JUSTICE STUKES delivered the unanimous opinion of the Court:

Jerome S.. Powell, the appellant, and C. E. Pridmore were tried in the Court of General Sessions for Greenwood County at the September, 1942, term upon the charge of murder of Raymond Abrams. The trial Judge directed a verdict of acquittal generally of the defendant Pridmore and, as to murder, of Powell, but submitted the issue to the jury of manslaughter as to the latter and he was convicted and sentenced, and brings this appeal upon the refusal of the Court to direct an acquittal of him or to grant him a new trial after conviction, substantially upon the ground that the evidence was insufficient to sustain a verdict of guilty of the homicide.

The deceased and the defendants, all young men, were employed in cotton mill work in the Town of Pelzer, but the deceased had recently lived in Greenwood and had registered for military service there. He asked appellant, who had an automobile, to take him to Greenwood on Saturday, January 3, 1942, where he had been summoned to appear before the Selective Service Board and agreed to furnish gasoline for the trip; it was afterward arranged that Pridmore would accompany them. They bought whiskey en route, of which they all drank at least some, and in Greenwood Powell and Abrams imbibed further, but neither became helpless. After the business of the trip had been completed and social calls paid they started on their return early in the afternoon but shortly stopped at a roadhouse where more drinks were indulged in and it was with difficulty that Powell and Pridmore got Abrams to leave.

About a mile farther on their journey Abrams began to insist that he be taken back to Greenwood to which Powell declined to agree, saying that they had to get home and that Abrams had put only five gallons of gasoline in the car. Abrams turned off the ignition and got out, saying

that they would fight it out, and Powell met him at the back of the vehicle which was parked on the right of the road and they passed blows in which Abrams was knocked down and Powell struck him several times in the face after which Abrams said that he had enough and they shook hands and got back into the automobile.

Hardly had they started again, however, before Abrams said that he was not satisfied, again cut off the ignition and said to Powell that they would "cut it out" and drew his knife, but Powell had no similar weapon and was unable to borrow one from Pridmore so he got out and ran to the top of the adjacent embankment and took up a rock, threatening Abrams that he would hit him with it unless the latter put up his knife, whereupon the knife was given to Pridmore, the latter still sitting in the automobile. This time they failed to make friends and Abrams did not re-enter the automobile as Powell did, started it and drove off, Pridmore meanwhile returning to Abrams his knife. Looking back, Pridmore saw Abrams walking along the road in the direction that the car was going. Abrams had threatened them with arrest by officers to which is attributed in argument the fact that the car followed a different route back to Pelzer than that used that morning, but Powell and Pridmore stopped twice at least en route, showing no indication of intended haste or hiding.

The keeper of a filling station a few hundred yards farther from Greenwood than the scene of the difficulty testified that Abrams came in asking if he could do so for the purpose of warming by the stove, it being a cold and rainy day. His face was noticeably bruised and he explained that he had been in a fight, and he spat blood, explained in the testimony of Powell and Pridmore that his lip and tongue were cut by the blows to his face in his fistic encounter with Powell. In conversation with the filling station operator Abrams learned that a bus would soon pass en route to Greenwood and he pawned his knife for the bus

fare, fifteen cents, and later substituted his pocketbook, saying that he might need his knife. He did not complain of suffering.

But he did not await the bus; instead he left the filling station after fifteen or twenty minutes and walked uphill toward Greenwood, the operator watching from a window and last seeing him at a point three or four hundred yards from the station and opposite the place in the adjacent woods where his body was later found, toward which place he turned and ran up the bank when the witness last saw him.

Upon his failure to return to his boarding house in Pelzer after several days, his landlady notified his father in Laurens and the latter went to investigate. He interviewed appellant who frankly told him about his fight with Powell on the preceding Saturday and that the latter had been left on the road. A day or so later the father of the deceased returned to Pelzer with a Laurens deputy and Powell willingly accompanied them, with Pridmore also, to the scene of the fight and pointed it out to them. Searching the neighborhood they soon found the body of the deceased, this on January 12th, the ninth day after his disappearance.

It was a few hundred yards from the highway in a comparatively bare spot of an otherwise closely wooded area, nude except for shoes; nearby was his open knife and also close were the embers of a fire which appeared to have been kindled with twigs and on it placed his clothes. Some of the latter were found there partially burned, his other garments presumably completely so. The body bore three deep stab wounds, one of which penetrated his heart, another a lung and the other also severe. The examining physician was unable to identify the instrument with which the wounds were inflicted, but he testified that they were oval in shape and appeared to him to have been caused by an ice pick or similar instrument. The body was partly decomposed and vultures had attacked it.

The office of the sheriff of Greenwood County, in which the fight occurred and the body was found, was promptly notified and a deputy went to the scene and assisted in bringing in the body and investigating the circumstances. The sheriff questioned Powell and Pridmore, learning substantially the facts above stated, and it is noted that he questioned them separately without important result.

The trio were friends and no motive for murder appears in the record, and there was no evidence of malice or premeditation, on which account the Court took from the jury the question of appellant's guilt of that crime but left to them to determine his guilt or innocence of manslaughter, apparently thinking that there was some evidence to connect the death with the fight upon the highway; but we are convinced from careful review of the record that there is no evidence to connect appellant with the death of the deceased beyond a reasonable doubt. There is no direct evidence that appellant inflicted the death wounds and the well-known rule of circumstantial evidence is applicable, that in order to convict thereupon of crime, the circumstantial evidence must point conclusively and beyond reasonable doubt to the guilt of the accused and be inexplicable upon any other reasonable hypothesis. We do not think that it is reasonable to believe that the deceased was suffering from the serious wounds which caused his death at the time of his transactions in the filling· station and his subsequent departure on foot, and there is absolutely no evidence that appellant ever saw him afterward. So far as the record of the trial goes, the death is a mystery and the preceding fist fight of deceased with appellant a mere coincidence. And the State in its effort to convict stands or falls on the strength of the evidence adduced on trial. Suspicion, however strong, does not suffice. Possible guilt, even probable, will not sustain a conviction of crime.

The governing principles of law were too recently set forth in the case of *State v. Kimbrell,* 191 S. C., 238, 4

S. E. (2d), 121, to require extended restatement or other citation of authority. And there is a later, similar decision, *State v. Dornberg,* 192 S. C., 513, 7 S. E. (2d), 467.

It is the judgment of this Court that a verdict of not guilty should have been directed; the conviction is reversed, the sentence set aside, and the case remanded for entry of a verdict of acquittal of the appellant.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES BAKER and FISHBURNE, and CIRCUIT JUDGE PHILIP H. STOLL, ACTING ASSOCIATE JUSTICE, concur.