17547

STATE, Respondent, v. Charles A. COLLINS, Appellant

(110 S. E. (2d) 270)

68

Messrs. deLoach, Wilson & deLoach,*Messrs. deLoach, Wilson & deLoach,* of Camden, and *C. T. Graydon,* of Columbia, *for Appellant,*

*Messrs. T. P. Taylor,* Solicitor, and *John W. Foard, Jr.,* Asst. Solicitor, of Columbia, and *Murchison, West & Marshall,* of Camden, *for Respondent,*

June 26, 1959.

Moss, Justice.

Charles A. Collins, the appellant herein, was indicted, tried and convicted at the February, 1959, term of Court of General Sessions for Kershaw County, South Carolina, for failure to support his wife and child. The appellant was convicted of a violation of Section 20-303 of the 1952 Code ot Laws of South Carolina, which provides:

"Any able-bodied man or man capable of earning or making a livelihood who shall, without just cause or excuse, abandon or fail to supply the actual necessaries of life to his wife or to his minor unmarried child or children dependent upon him shall be guilty of a misdemeanor * * *"

The appellant and Marilyn Perry were ceremonially married at York, South Carolina, on September 1, 1957, each being eighteen years of age. They had met in the summer of that year at Myrtle Beach, South Carolina, where the wife was participating in a beauty contest. At the time of their marriage, the appellant had attended Campbell College at Buies Creek, North Carolina, for one year, and a summer session at the University of North Carolina, and was living with his parents at Myrtle Beach, South Carolina. The wife had completed high school and was living with her mother in Kershaw County, South Carolina. The appellant and his wife attended Campbell College for nine months, completing the 1958 term, and then went back to Myrtle Beach where they stayed for two or three weeks. They attended school at Presbyterian College in Clinton, South Carolina, for nine weeks during the summer term. After leaving summer school at Presbyterian College, they visited and stayed with the wife's mother in Kershaw County for a short period of time, and visited and stayed with the parents of the appellant at Myrtle Beach for a short period of time. In September, 1958, they went to Athens, Georgia, so that the appellant could enroll as a student and attend the University of Georgia. They had expected to live in a trailer to be purchased by Charles A. Collins, but because of the non delivery of the trailer they spent the first night in a hotel in Athens, Georgia, and the next two nights in the home of the owners of a trailer park where they had planned to put their trailer. It appears from the evidence that after staying at the home of the owners of the trailer park, that the appellant and his wife moved to an apartment, which was unfurnished, and was to be used by them until the arrival of their trailer. This apartment was partially furnished by the appellant and his wife so that it could be temporarily occupied. The wife had been in Athens, Georgia, with the appellant for about a week, and until September 23, 1958, when she left him and returned to the home of her mother in Kershaw County. At the time the wife left she was in the eighth month of pregnancy. Thereafter, on November 20, 1958, a

son, Robert Perry Collins, was born of this marriage, in a hospital in Lancaster, South Carolina.

When this case was called for trial in the Court of General Sessions for Kershaw County, South Carolina, the appellant objected to the jurisdiction of the Court. The objection was upon the ground that the desertion, if any occurred, took place in the State of Georgia, and hence the court had no jurisdiction. It was further asserted that the undisputed facts in the case show that the appellant and his wife have never made their home in Kershaw County; that the place in South Carolina where the appellant lived before marriage and which he called home after marriage was Myrtle Beach, in Horry County, South Carolina; that they were living temporarily in Athens, Georgia at the time the separation of the parties took place. The first question for determination is whether the Court of General Sessions of Kershaw County had jurisdiction to try this case.

The appellant asserts that under Art. III, Section 2 of the Constitution of the United States, the trial of all crimes shall be by a jury and shall be held in the State where said crimes shall have been committed. He further contends that under Art. I, Section 17 of the 1895 Constitution of South Carolina, that, "No person shall be held to answer for any crime * * * unless on a presentment or indictment of a grand jury of the County where the crime shall have been committed, * * *"

This Court has held that the offense of nonsupport is made by the Statute, Section 20-303, of the 1952 Code of Laws of South Carolina, a continuing one. *State v. Stone,* 111 S. C. 496, 98 S. E. 333, and *State v. Nesmith,* 185 S. C. 341, 194 S. E. 160, 163.

In the case of *State v. Nesmith, supra,* this Court quoted with approval from 8 R. C. L., at page 310, Criminal Law, Section 336, the following:

"Generally speaking, it is a fundamental rule of criminal procedure that one who commits a crime is answerable therefor only in the jurisdiction where the crime is committed,

and in all criminal prosecutions, in the absence of statutory provision to the contrary, venue must be laid as in the county of the offense, and it must be proved as laid. Such an offense as desertion or failure to provide for a wife or children is however negative, the omission of a duty, and therefore venue depends on the question where the omission to perform that duty occurs."

In the case of *State v. Stone, supra* [111 S. C. 496, 98 S. E. 333], the husband was indicted for abandoning and failing to supply the actual necessities of life to his wife. The wife was a native of Lexington County, and upon marriage moved to Aiken County to live with her husband. The husband left his home in Aiken County and stripped the house of all the furniture. The wife returned to the home of her father in Lexington County. The defendant was indicted in Lexington County and moved to dismiss the indictment on the ground that the Court in said County was without jurisdiction to try the case, because the offense, if any, was committed in Aiken County. The Presiding Judge held that the Court in Lexington County was without jurisdiction and dismissed the case. The State appealed from this ruling. This Court reversed the ruling of the lower Court, and said:

"Abandonment may be one act, or a continuing act, according to circumstances. The offense is made by the statute a continuing offense. While it is ordinarily true that a husband is only required to furnish the necessities of life at his place of residence, yet, if he destroys his home and provides no other place where she can live, then, from the necessity of the case, she must live where she can live, and the place where she can live is the place where he must provide for her. Mrs. Stone found a home in Lexington County and it was his failure to supply the necessities in Lexington that was a violation of the statute."

In the case of *State v. Free,* 158 S. C. 515, 155 S. E. 838, 839, the defendant was charged with nonsupport of his minor child. It appears that because of the conduct of the husband, the wife left her husband's home and kept the child

in her custody. The defendant moved for a directed verdict of "not guilty" on the ground that he was required to support his minor child only at the place of his residence, and that the evidence showed conclusively that the wife had left the home and taken the child with her. The motion was refused, and upon appeal to this Court the judgment below was affirmed and this Court said:

"The obligation of a husband to his wife is paramount, and it is his duty to provide her a home in accordance with his means, where she may live as the object of his care and comfort, without interference from members of the household; and 'if such a home is not provided, the wife is justified in leaving, and not only is not guilty of desertion in so doing but may charge the husband with constructive desertion' ". *State v. Bagwell,* 125 S. C. 401, 118 S. E. 767, 768.

We come now to the practical question of whether the appellant was guilty of such conduct within the family circle as would justify the wife in leaving him and charging him with constructive desertion. If he were guilty of such conduct, and by reason thereof she left him and returned to the home of her mother, it was his duty to furnish her, and the child born after the separation, the necessities of life at the home of her mother in Kershaw County, South Carolina.

We summarize the testimony given by the wife as to her reason for leaving Athens, Georgia, and returning to the home of her mother. She testified that she was in the eighth month of her pregnancy and that on September 22, 1958, that she and her husband got ready to go to bed and "Charles tried to make love to me and I resisted him". She said he became very angry and threw his hand over her face and hurt the side of her face and nose, and that a struggle ensued, and she got up and went to the living room, and the husband pushed her on to the floor. She says that she advised him that she was going to leave him and he got in the bed and laughed and said "Go ahead, and leave me. Don't talk about it; do it. I only have to give you $100.00 baby sup-

port." She testified that in her pajamas and housecoat she left the home and went to the police station at Athens, Georgia, to find out what could be done about what had taken place. She testified that she resisted the marital advances of her husband because she was in the eighth month of her pregnancy and the doctor had advised her against such. She said she had told him of the advice of the physician that engaging in marital relations might injure her or the life of her unborn baby, but even with such information he tried to force himself upon her. She testified that she left him because she feared for her life and the life of her unborn baby. She further testified that during this same week that her husband came in late and that "I got up and opened the door for him, and got back in the bed to go to sleep, and he was wanting to talk to me, and I was sleepy, and he kicked me out of the bed, and told me to sleep on the floor." The appellant denied that he attempted to have marital relations with his wife as she had testified. He did admit that he attempted to kiss his wife and she resisted such and left the bed and "ran through the door screaming and hollering and I tried to get her to quit screaming and hollering, and I was embarrassed, but she continued to scream and holler. So I put my hand over her mouth for the purpose of quieting her down." The appellant admitted that after the occurrence above related the wife did leave the room and was gone about forty-five minutes or an hour. The testimony shows that the wife left Athens, Georgia, on September 23, 1958, and returned to the home of her mother. She left the appellant a note wherein she stated, "I know I will miss you, but I can't live with you until you change. * * * I can't stand your dirty talk and your mean attitude. I'll be back when you have learned how to treat a wife and have a place for me to live."

While the appellant was under cross examination he was asked about testimony he had given in another hearing. ·Counsel for the State asked him if he hadn't testified as follows: "Q. And at that time you were attempting to have

relations with her, and you knew she was approximately seven months pregnant?" and your answer was, "Yes, sir." In answer to this question he said, "I was attempting to make love to her." He further testified on cross examination as follows: "Q. All right, sir. Now, Mr. Collins, did you ever spit in your wife's face? A. After she slapped and kicked me. "Q. Just answer that 'Yes' or 'No'. Did you ever spit in her face? A. Yes, sir." He further admitted that he slapped his wife when she was about four months pregnant. He says that he did this because she threw a bowl of jello on him and slapped him.

In the charge of the trial judge to the jury they were instructed as follows:

"Now, I charge you, gentlemen, that a husband has the right to choose the place of abode, that is, where the family shall live. Marriage imposes upon the husband the duty of providing his wife and child with a reasonably adequate and suitable home and support. The wife owes a reciprocal duty of living with the husband where he has discharged his obligation to provide her with a reasonably suitable home and support. I charge you further that a husband incurs no liability for a failure or refusal to support a wife who has deserted a reasonably suitable place of abode chosen by him, or who, without just cause or excuse, has abandoned his bed and board. The duty of a husband to provide a home not only extends to the furnishing of material comforts in accordance with his means, but requires the husband to furnish a home wherein the wife is free from physical abuse, physical ill-treatment, or violence, and is not such a home as would be intolerable or repulsive to a woman of ordinary and proper sensibilities. If such a home is not provided, the wife is justified in leaving, and is not guilty of desertion, but may charge the husband with constructive desertion. If such a home is not provided, the wife would be justified in refusing to live with her husband. But I charge you that, if such a home is provided, or is offered in good faith, it would be her duty to live therein, and she would not in that case be entitled to separate support."

In the case of *State v. Wellman*, 102 Kan. 503, 170 P. 1052, L. R. A. 1918D, 949, Ann. Cas. 1918D, 1006, it was held that where a wife, after leaving the matrimonial domicile in the State of Missouri, because of the defendant husband's ill-treatment, brought the children into the State of Kansas without his knowledge and consent, that the defendant was properly tried in Kansas on a charge of having violated a statute making it a felony for a parent, without lawful excuse, to neglect or refuse to provide for the support of his child under the age of sixteen years, who is in destitute or necessitous circumstances, Gen. St. 1915, § 3410. In support of his contention that the statute was not applicable to him, because of his absence from Kansas at the time of the commission of the alleged offense, the defendant relied upon another Kansas statute, which provided that "every person being without the State, committing or consummating an offense by an agent or means within the state, is liable to be punished by the laws thereof in the same manner as if he were present and had commenced and consummated the offense within the State." Gen. St. 1915, § 7930. This defense was rejected by the court; it was pointed out that the statute, being only declaratory of the common law, did not purport to enumerate all the conditions under which a person absent from the State might become an offender against its punitive laws, and that, the statutory offense, being essentially one of omission, the aid of supplementary legislation was not needed to bring a person outside of the State within its condemnation. Whether the defendant was answerable to the Kansas court was held to depend upon whether he owed this State a duty to support his children while they were there with their mother. This question was answered in the affirmative, the court saying:

"If he had sent his wife and children into Kansas, it would hardly be doubted that he became responsible for their care here. If as a result of his wrongdoing they were obliged to leave him and seek refuge elsewhere, the circumstances that they found shelter in a state which undertakes to punish the neglect of parental duty under such circumstances, when they

might have chosen one having a different policy in that regard, imposes upon him no hardship of which he has any standing to complain." [102 Kan. 503, 170 P. 1056.]

We think that the trial Judge was correct in over- ■ ruling the motion of the appellant which questioned the jurisdiction of the Court of General Sessions of Kershaw County. There is, in our judgment, sufficient evidence in the record showing that the wife left the appellant because of his abuse and ill-treatment of her. Since the appellant did not provide his wife with a home where she was free from physical abuse and ill-treatment, she was justified in leaving, and in so doing, she was not guilty of desertion, but the husband was guilty of constructive desertion. The wife and child were entitled to support by the appellant in Kershaw County because his misconduct had caused her to seek refuge there. The appellant first breached his duty to contribute to the support of his wife and child in Kershaw County, and we think he was properly indicted in said county for this omission. It was his failure to supply the necessities of life to his wife and child in Kershaw County that was a violation of the statute.

The appellant asserts that the trial Judge committed ■ error in not directing a verdict for him under the facts and the applicable law. It is generally true the husband has the right, acting reasonably, to choose where the family shall reside, and when the wife refuses to go with him she is guilty of desertion. *Wolfe v. Wolfe,* 220 S. C. 437, 68 S. E. (2d) 348, and *Oswald v. Oswald,* 230 S. C. 299, 95 S. E. (2d) 493. However, the wife is not required to live in a home chosen by the husband where she is subjected to physical abuse and ill-treatment. The able trial Judge submitted to the jury the question of whether the wife was justified in leaving the home provided by the appellant. He told the jury that the appellant incurred no liability for the failure or refusal to support a wife who has deserted a reasonably suitable place of abode chosen by him, or who without just cause or excuse has abandoned such home. He

likewise charged the jury that if such a home was not provided, the wife would be justified in leaving. Upon this issue the jury has found against the appellant. In our opinion there was sufficient evidence to require the trial Judge to submit this question to the jury. We should point out in this connection that the burden rested upon the appellant to show just cause or excuse for his failure to support his wife and child. *State v. Goins,* 122 S. C. 192, 115 S. E. 232, and *State v. Sutherland,* 217 S. C. 259, 60 S. E. (2d) 591.

The evidence in this case is undisputed that the appellant has not, since September 23, 1958, furnished any support to his wife, nor has he furnished any support to his child since its birth. The bills of the hospital where the child was born, and physicians who attended the child at birth and thereafter, have not been paid by the appellant, nor has he made any contribution of any kind towards his support. The record also shows that the appellant is an able-bodied man, and one capable of earning or making a livelihood. The evidence also shows that the wife and child of the appellant are being supported by the mother of the wife. We do not think there was any error committed by the trial Judge in refusing to direct a verdict of acquittal in favor of the appellant.

A number of the exceptions filed by the appellant charges the trial Judge with error in the admission of testimony. The appellant asserts that it was error to permit the introduction of testimony with reference to his financial condition. The Court permitted the wife to testify that the husband received monthly checks from the Colvis Company, this being a business with which the father of the appellant was connected, and that the appellant had told the witness that he owned a one-eighth interest in said company, which operated twenty-four stores. We think this testimony was properly admitted because it showed that the appellant was earning or making a livelihood. It has been held that it is proper to admit evidence of the amount of the husband's income or earnings, or his earning capacity.

*State v. Linck,* 68 Mo. App. 161; *People v. Martin,* 100 Cal. App. 435, 280 P. 151; and 42 C. J. S., Husband and Wife, § 640b, p. 299. The testimony was also admissible because when the appellant was upon the stand he testified, in response to questions by his own attorney, as to his earnings. We held in *State v. O'Neal,* 210 S. C. 305, 42 S. E. (2d) 523, that an objection to the admission of evidence is waived where the same or similar evidence has been elicited by the objector. Under this rule the appellant is not in position to complain of the ruling of the trial Judge in admitting the evidence as to his wealth or income. The testimony was also admissible because the appellant testified that he had no way of supporting his wife and child.

The appellant also objected to the questions as to how he had employed counsel to represent him. The appellant testified that he did not pay any of his counsel for their representation. We think that the trial Judge committed no error in permitting this inquiry. It was proper for the appellant to be examined as to his wealth and his ability to support his wife and child.

We have considered the other exceptions posed by the appellant as to the admission of testimony. We find such exceptions to be without merit. Some of these questions had to do with the cross examination of the mother of the appellant. A review of these questions shows that they were calculated to test the bias, prejudice and interest of the witness. Considerable latitude is allowed in the cross examination of a witness for this purpose. *State v. Thompson,* 118 S. C. 191, 110 S. E. 133.

We should point out also that the admission of evidence is largely within the discretion of the trial Judge, and erroneous exercise of it must be accompanied by probable prejudice to the appellant in order to entitle him to a new trial for the admission of the questioned evidence. *State v. Deas,* 202 S. C. 9, 23 S. E. (2d) 820, and *State v. Gregory,* 198 S. C. 98, 16 S. E. (2d) 532. We have examined the entire record in this case and conclude that

the evidence admitted over the objections of the appellant was not prejudicial to him. The exceptions assigning error as to the admissibility of evidence are overruled.

The final question made by the appellant is that the Court committed error in not granting him a new trial. What we have heretofore said disposes of all the exceptions under this question except the one charging error in failing to charge the following request: "Inasmuch as it was brought out in argument we would like to have you charge the jury that the findings of a not guilty verdict in this case would not preclude any other action for support." This question was not argued in the brief of the appellant and we, therefore, consider it abandoned. *Shea v. Glens Falls Indemnity Company,* 228 S. C. 173, 89 S. E. (2d) 221, and *Field v. Gregory,* 230 S. C. 39, 94 S. E. (2d) 15.

In the brief of the appellant under the last question he approves the charge made by the trial Judge, as is hereinbefore quoted, but asserts that the Court should have explained to the jury that such physical ill-treatment, abuse or violence must result in such bodily harm as would affect the life or health of the wife of the appellant. We do not find that this question was raised at the trial. At the conclusion of the charge, the trial Judge gave the appellant opportunity, pursuant to Section 10-1210 of the Code, 1957 Supplement, to request additional instructions. He did not make the request to the trial Judge to instruct the jury in the particular which he now assigns as error. Having failed to make such appropriate request, he cannot now complain. *State v. Anderson,* 229 S. C. 403, 93 S. E. (2d) 210; *State v. Allen,* 231 S. C. 391, 98 S. E. (2d) 826; *State v. Hollman,* 232 S. C. 489, 102 S. E. (2d) 873.

All exceptions are overruled and the judgment of the lower Court is affirmed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.