## 18068

The STATE, Respondent, v. Lawrence L. HYDER, Appellant.

(131 S. E. (2d) 96)

*Messrs. Julius B. Aiken* and *J. Wiley Brown,* of Greenville, for Appellant,

*Messrs C. Victor Pyle, County Solicitor,* and *G. M. Ashmore, Assistant County Solicitor,* of Greenville, *for Respondent,*

May 14, 1963.

Moss, Justice.

Lawrence L. Hyder, the appellant herein, was tried and convicted in the Greenville County Court upon an indictment charging him with having in possession sixty-six gallons of alcoholic liquors to which the revenue stamps required by Section 65-1267 of the Code had not been affixed, Section 65-1270 of the Code; and also of having in possession for an unlawful use and storing the said alcoholic liquors in violation of Section 4-91 *et seq.,* of the 1952 Code. The appellant made appropriate motions for a directed verdict on the ground that there was a lack of evidence tending to prove the guilt of the appellant or from which guilt could be inferred. These motions were refused. This appeal followed. The appellant contends, by appropriate exceptions, that the evidence is insufficient to sustain his conviction and, therefore, there was error in refusing his motion for a directed verdict.

In considering whether the Court below erred in not directing a verdict in favor of the appellant, we must view the testimony in the light most favorable to the State. When a motion for a directed verdict is made, the trial Judge is concerned with the existence or nonexistence of evidence, not with its weight, and although he should not refuse to grant the motion where the evidence merely raises a suspicion that the accused is guilty, it is his duty to submit the case to the jury if there is evidence, either direct or circumstantial, which reasonably tends to prove the guilt of the appellant or from which his guilt may be fairly and logically deduced. We have also held that in a prosecution for the violation of the liquor laws each case must be decided on its own peculiar facts and surrounding circumstances. *State v. Rayfield,* 232 S. C. 230, 101 S. E. (2d) 505.

It is undisputed that on September 22, 1961, in a peach orchard near the Ridge Road in Greenville County, the law enforcement officers found sixty-six gallons of alcoholic

liquors in half gallon fruit jars. There were no state revenue stamps affixed to the containers.

· One of the officers testified that previous to September 22, 1961, that a distillery had been located in the woods near the edge of the peach orchard directly across the Ridge Road from a tenant house. This officer arrived on the scene at about 6:00 o'clock in the morning and found that one hundred and twenty-six gallons of whiskey, which had been made the previous day, was stacked up in the edge of the peach orchard. He testified that the appellant and a negro man drove into the yard of the tenant house at about 6:35 A. M. in an old model Chevrolet automobile. They walked around in the yard for some little time and the negro man walked across the road and in the direction where the whiskey was stacked. He then came back to the house and left in the Chevrolet automobile and was gone for thirty or forty minutes, the appellant remaining in the house. The negro man then came back and drove into the yard of the tenant house and, thereafter, drove across the road and down into the peach orchard where the whiskey was stacked. This witness testified that he heard sounds indicating that something was being loaded into the car. At approximately 8:00 o'clock in the morning the car drove out of the peach orchard and back up into the tenant house yard. This witness testified that he could see the cases of fruit jars stacked up in the back seat and in the trunk of the car. The appellant met the car in the yard and "walked beside of it as the negro drove it on up into the peach orchard." This witness further testified that when the car came back out of the peach orchard to the yard of the tenant house that the appellant carried an automobile seat from the house to the car. It was then testified that the negro man left in the car and the appellant walked away from the house. A short time thereafter some woman drove an automobile up to the tenant house and blew the horn. Presumably, the appellant left in this car because he was not seen further until he came back to the tenant house in a Ford automobile with the same negro man that had left earlier in

the Chevrolet. A young white boy accompanied them. The negro man and the young white boy got out of the Ford, removed a gallon jug therefrom and went in the direction of the distillery and the appellant left. At about 1:00 o'clock P. M. the appellant came back to the tenant house, being brought there by a car that just stopped and let him out. This witness, by radio, advised other officers that the appellant was in the house and for them to come to the tenant house. As the officers approached the house, the appellant was talking on a telephone which was contained in a locked box on the front porch of the tenant house. When the appellant saw the approach of the officers, he dropped the telephone and ran into the tenant house. It was further testified that the tenant house was full of peach boxes with the appellant's name on them. This officer further testified that they traced the automobile tracks going up into the peach orchard where the liquor was stored and returning to the yard of the tenant house. The place where the liquor was stored in the peach orchard was seventy-five to eighty yards from the tenant house. This officer testified, during cross examination by counsel for the appellant, that he was using field glasses while observing what was going on in the tenant house and that he was some two hundred yards therefrom.

A second officer testified that as a result of a radio communication he went with another officer to the tenant house and that the appellant ran from the house into the peach orchard. This officer gave chase and caught him, bringing him back to the tenant house. He said "I asked what he was running for, and he said he didn't want to see me." This witness further testified that when he saw the appellant running from the tenant house towards the peach orchard "I called his name and he looked to his left, looked me in the face and kept running on into the orchard," and "I ran him down and he stopped when I took physical custody of him." "I caught him by the seat of the pants and stopped him."

Two other officers by their testimony confirmed parts of the foregoing testimony. One of them testified to finding

behind the tenant house in the end of an irrigation pipe a half gallon fruit jar with approximately a half a pint of whiskey in it. It was also testified that the appellant "had had a drink or two," but no whiskey was found on his person.

The appellant denied any connection with the whiskey found in the peach orchard. He testified that the whiskey did not belong to him nor did he have any knowledge of it being in the peach orchard. He further testified that he did not own the land where the whiskey was found. The appellant's wife testified that she owned the place where the whiskey was found.

We think that the testimony heretofore recited fully warranted the trial Judge in refusing the motion of the appellant for a directed verdict and submitting the case to the jury.

We have examined the charge of the trial Judge and he fully instructed the jury as to the elements of the offenses charged in the indictment. He, likewise, correctly charged the law of circumstantial evidence. We conclude from a reading of the record that the case against the appellant was based not only on direct evidence but also on circumstantial evidence.

The appellant relies, to a great extent, on the fact that he did not own the land on which the whiskey was found. Under the circumstances, the question of whether or not he owned the land was immaterial because even a trespasser on real estate may be guilty of storing whiskey thereon. *State v. Holley,* 136 S. C. 68, 134 S. E. 213; *State v. Anderson,* 230 S. C. 191, 95 S. E. (2d) 164.

The appellant asserts that the trial Judge erred in his charge as to (1) reasonable doubt; (2) circumstantial evidence; and (3) as to affixing stamps on each bottle or container of alcoholic liquor.

It appears from the record that at the conclusion of the charge of the trial Judge he gave the appellant opportunity, pursuant to Section 10-1210 of the

Code, to express any objections to the charge as made or to request additional instructions. Since the appellant having at the time voiced no objection to the charge as given and not having requested any amplification or clarification in any respect, he cannot now complain. *State v. Collins,* 235 S. C. 65, 110 S. E. (2d) 270. The failure of the appellant to object or request additional instructions constituted a waiver of any right to a fuller charge. *State v. Hollman,* 232 S. C. 489, 102 S. E. (2d) 873.

However, the appellant did request the trial Judge, and such was refused, to charge the jury that suspicion, no matter how great, would not be sufficient to support a conviction. The appellant charges that the trial Judge erred in refusing the foregoing request.

We have held that suspicion, however strong, does not suffice to sustain a conviction. *State v. Powell,* 202 S. C. 432, 25 S. E. (2d) 479. "Suspicion" implies a belief or opinion as to guilt based upon facts or circumstances which do not amount to proof. *Bushardt v. United Investment Company.* 121 S. C. 324, 113 S. E. 637. The guilt of the accused, of course, must be proven beyond a reasonable doubt. *State v. Orr,* 131 S. C. 276, 126 S. E. 766. The reason for this rule is that all presumptions of law, independent of evidence, are in favor of innocence, and every person is presumed to be innocent until he is proved to be guilty. When the trial Judge in this case instructed the jury that the burden was upon the State to prove the guilt of the appellant beyond a reasonable doubt, this was tantamount to charging the jury that suspicion, however strong, would not suffice to support a conviction. In view of the foregoing charge and the instructions as to circumstantial evidence, we think there was no prejudice to the appellant by the failure of the trial Judge to give the requested instruction. We have held that the mere fact that the circumstances are strongly suspicious and the defendant's guilt probable is not sufficient to sustain a conviction because the proof offered by the State must evclude every

reasonable hypothesis except that of guilt and must satisfy the jury beyond a reasonable doubt.

Having held that the appellant was not entitled to have the jury instructed as requested, it is unnecessary for us to determine whether the trial Judge erred in refusing such request upon the ground that the same had not been reduced to writing and submitted before the commencement of the charge.

The appellant contends that the trial Judge erred in admitting, over objection, the field glasses or binoculars used by the witness for the State on the ground that the binoculars offered in evidence were not the ones used by such witness during his observations on the date of the alleged crime.

This witness was cross examined by counsel for the appellant and asked whether or not he used field glasses in making his observations as to what went on at the tenant house on the day of the alleged crime. The witness admitted that he had climbed a tree and was about two hundred yards from the tenant house and was using field glasses in making his observations.

When the appellant was offering his testimony, he presented his brother as a witness and he testified that pursuant to the instructions of one of the attorneys for the appellant that he went down the Ridge Road, a distance of one hundred and seventy-five steps from the tenant house in question, and climbed the tallest tree he could find, taking with him a pair of field glasses which he used in observing people in the yard of the tenant house. The witness testified as to the result of his observations as follows: "Q. All right, could you recognize anybody to swear to their identification that far through those field glasses? A. No, sir." The appellant then offered in evidence the field glasses that had been used on this occasion.

The witness for the State who had used field glasses in making his observations was called in reply and testified as follows: "Q. * * * Now, you were observing with binocu-

lars or field glasses? A. Yes, sir. Q. I show you some binoculars and ask you if you are able to identify them. A. Well, the ones I was using were identical to these. They were government issued navy surplus glasses; and these are not mine, but mine were identical to these." Counsel for the appellant objected to the admission of such field glasses as an exhibit on the ground that "We have no way of knowing they are identical, and we object unless it is the same." The objection was overruled.

The admission of evidence is largely within the discretion of the trial Judge and in order to constitute reversible error, in the admission thereof, the accused must be prejudiced thereby, and the burden is upon him to satisfy this Court that there was prejudicial error. *State v. Smith,* 230 S. C. 164, 94 S. E. (2d) 886; *State v. Bullock,* 235 S. C. 356, 111 S. E. (2d) 657.

The question of the use of field glasses or binoculars by one of the witnesses for the State was injected into this trial on cross examination of such witness by appellant. The appellant also offered testimony showing the use of field glasses by one of his witnesses in making certain observations which were testified to by such witness.

The testimony is that the field glasses offered in evidence by the State were "identical" with the ones actually used by the witness for the State. We have carefully reviewed the entire record in this case and we are unable to see how the appellant was prejudiced by the introduction into evidence of the field glasses which were identical with the ones used by the witness for the State. The appellant argues that it is possible that the field glasses originally used could have been dropped or knocked out of focus or in some way defective. There is no evidence of such in this record nor did the appellant cross examine the witness of the State thereabout. The fact that the field glasses as used by the State's witness were not produced did not deny the appellant the opportunity of cross examining the witness about the condition of such glasses.

The record shows that the appellant, subject to his objection, did cross examine the State's witness concerning his knowledge of binoculars and such witness admitted that he was no expert on binoculars and knew nothing about their inner workings. The record does not show that any experiment was conducted with the field glasses at the place where they were used. Under the factual showing in the record, the mere introduction of an identical set of binoculars could not have prejudiced the rights of the appellant.

All of the exceptions of the appellant are overruled and the judgment of the lower Court is affirmed.

Affirmed.

TAYLOR, C. J. and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.