18525

The STATE, Respondent, v. David BRAZZELL, Appellant
(149 S. E. (2d) 339)

*Messrs. Hayes, Hayes & Brunson,* of Rock Hill, *for Appellant,*

*Edward M. Jackson, Esq., County Solicitor,* of Rock Hill, *for Respondent.*

June 20, 1966

BUSSEY, Justice.

The appellant was convicted by a jury and sentenced in the Criminal, Juvenile and Domestic Relations Court of York County on a charge of having uttered a fraudulent check in violation of Section 8-176 of the 1962 Code of Laws of South Carolina. The check involved, in the amount of $502.00, was dated April 13, 1964, and issued by appellant to one Lanier in connection with the purchase of approximately seven cases of legal whiskey. It was not paid by the bank upon which it was drawn, for lack of sufficient funds, following which Lanier gave appellant written notice in accordance with the provisions of Section 8-177 of the Code, which notice did not result in payment.

·The State's case was predicated on the presumption of fraudulent intent arising under Section 8-177 and the testimony of the prosecuting witness, Lanier. One other witness testified for the State, but his testimony throws no light whatever upon the issues.

The record reflects certain undisputed facts. Lanier was the operator of a retail liquor store in the vicinity of Rock Hill, and the appellant operated a place of business in the same vicinity known as Hill Top where, among other things, he was engaged in the business of the illegal sale of legal whiskey. For some two and a half years prior to April 1964 appellant regularly procured substantial quantities of whiskey for illegal sale from Lanier, who was not only fully cognizant of the operation conducted by appellant, but allowed him a discount because of the quantity. The inception of, as well as the manner and extent of, the business operation between the parties is fairly reflected by the following testimony of the prosecuting witness.

"Q. Walt, you've been doing business with Mr. Brazzell for how long?

"A. I'd say before this incident happened two years and a half, ever since Mr., you want me to finish this, ever since Mr. um * * * the gentleman down on Trade Street went out of business. He was trading with him and he come from down there and recommended David. Pittman.

"Q. Pittman?

"A. Yes, sir.

"Q. He recommended David to you, that he was a good payer didn't he?

"A. Yes, sir.

"Q. And that he bought a good bit of liquor?

"A. Yes, sir, that's right.

"Q. And that he would give you a check on Saturday and come back and pick it up on Monday morning?

"A. I don't hold anything over a week, sir.

"Q. But it was your understanding that you would get a check?

"A. If he wasn't there I run it in when I went to the bank regardless of when it was.

"Q. Your understanding was that he would give it to you on Friday or Saturday and you would run it in on Monday if he didn't pick it up?

"A. If he wasn't there, yes, sir.

"Q. Because the Tax Commission won't let you sell liquor on credit?

"A. No, sir.

"Q. We want to be sure we get a check or get money don't we? Isn't that right?

"A. That is right.

"Q. But you had been holding these checks over the weekend for him for a long time, two years.

"A. He would give them to me, I don't go to the bank no time but Saturday and Monday and sometimes I don't go on Saturday."

The testimony of Lanier reflects that, as a general rule, appellant's purchases were made on Friday afternoon at which time a check would be given, which check would be picked up by appellant giving Lanier cash the following Monday morning. There were, however, exceptions. In some instances purchases were made on days other than Friday; occasionally purchases were made for cash, and in a very few instances the appellant did not come in on Monday to pick up his checks, in which instances his checks were deposited by Lanier and paid by the bank.

Before proceeding to discuss the check with which we are immediately concerned, it may be well to state the contention of the appellant, which is that such check was not one issued by him in violation of the statute, but simply a promise to pay Lanier in accordance with their usual course of dealing. The evidence reflects that the particular check was given and dated on a Friday. Lanier's testimony reflects an understanding or agreement between the parties at the time the particular check was drawn, that Lanier was to "keep out" said check until Monday morning, in accordance with

the usual custom. He was emphatic, however, that he did not agree to "hold" the check. Unaided by the testimony of Lanier, one might well wonder what the difference would be between "holding" a check, and simply "keeping out" a check until Monday. His testimony, however, reflects that he regarded a "hold" check as one which the holder agreed to hold for an indefinite period of time, and, on the other hand, a check which he simply agreed to "keep out" or not present until a day certain was, in his view, not a "hold" check.

On Monday morning following the issuance of the check, appellant went to Lanier but did not pay the amount of the check and pick it up, as was his usual custom. Instead, he purchased additional whiskey from Lanier, giving him another check in the amount of $262.00 therefor. The testimony of Lanier as to what transpired between the parties on that occasion would seem to reflect rather clearly the true arrangement and understanding between the parties about checks in general, including the one here involved. We quote from his testimony the following:

"A. You want me to explain? Well, on Monday when he came back he asked for $260.00, $262.00 worth on Monday.

"Q. That is monday?

"A. I said, well, David, didn't you make anything over the weekend? He said yeah, but I had to buy beer for the Hilltop, said I had to use it over there, said I ain't trying to beat you out of nothing, I ain't never give you a bad check. I said you're right there but things are getting a little out of hand." * * *

"A. I just asked him, David you ought to have the money. What's the idea of wanting $260.00 worth on another check. I haven't been to the bank yet. He said well, I had to buy beer for my place on Hilltop. Said it's running me short of money." * * *

"A. See, he wanted $260.00 worth. I said, well you ought to have the money David. He said I want to give you a

check. You ought to have the money. You worked over the weekend. Well, I had to take that and buy beer over there."

Other than the issuance of the check, the testimony of Lanier attributed to appellant no representation that he, in fact, had on deposit or, for that matter, in hand sufficient funds to cover the check at the time that it was drawn. A portion of Lanier's testimony attributes the arrangements which he had with appellant, about the handling of the checks, to the fact that appellant didn't want "the bank and everybody to know his business" as a result of appellant's checks being deposited. It is quite logical and no doubt true that neither appellant nor Lanier wished to advertise the business arrangement between them by the deposit of numerous, substantial checks. It is quite apparent, however, from Lanier's testimony as a whole, that the desire not to advertise such was not the sole reason for the arrangement between them about keeping or holding checks until Monday morning.

No case from this or any other jurisdiction precisely in point on the facts with the instant case has come to our attention. In *State v. Winter*, 98 S. C. 294, 82 S. E. 419, this court held that a postdated check was a promise to pay, at a future time, and not within the provisions of the statute. The check in the instant case was not postdated, but we do not think that any sound distinction can be made between a postdated check and a currently dated check, as to which, there was no representation by the drawer that it was then good, and, there was an understanding between the parties at the time it was issued that it was neither payable nor presentable until a future date. In determining whether the trial judge should have directed a verdict of acquittal or submitted the case to the jury, the test is whether there be any substantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced. *State v. Littlejohn*, 228 S. C. 324, 89 S. E. (2d) 924; *State v. Rayfield*, 232 S. C. 230, 101 S. E. (2d) 505; *State v. Hyder*, 242 S. C. 372, 131 S. E. (2d) 96.

124

If, in fact, the check in question was a mere promise to pay, rather than a check within the purview of Code Section 8-176, the case of the prosecution is not aided or supported by the presumption arising under the provisions of Section 8-177, since that section applies only to checks within the meaning of Section 8-176. Unaided by that presumption, the sole evidence for the prosecution is the testimony of Lanier himself, and the question before this court reduces itself simply to whether, contained in the testimony of Lanier, there is any substantial evidence which reasonably tends to prove that the check in question was in actuality a check within the purview of the statute, as opposed to a mere promise to pay on the following Monday morning.

In short, a careful examination of all his testimony convinces us that all of the facts and circumstances disclosed by it, considered together, fall short of that degree of substantiality required for a fair, logical and reasonable inference of the guilt of the defendant. To the contrary, his testimony strongly supports the inference that Lanier was, in effect, financing appellant in the illegal sale of whiskey with no expectation of getting paid for the whiskey which Lanier furnished until appellant had at least had opportunity to sell such whiskey. And, that the checks given from time to time, including the one here involved, were taken by Lanier as evidence of appellant's indebtedness, which he promised to pay, and for additional purpose of protecting Lanier against a charge of unlawfully selling whiskey on credit. In any event, it is not fairly, logically or reasonably inferable from his testimony that the check was one within the purview of, and issued in violation of, the statute.

In our opinion the trial judge should have directed a verdict of acquittal, and our conclusion in this respect makes it unnecessary to consider or decide the other questions raised on the appeal.

Reversed.

Moss, C. J., Lewis and Brailsford, JJ., and W. L. Rhodes, Jr., Acting J., concur.