19391

The STATE, Respondent, v. Robert C. McCORD, Jr., Appellant

(187 S. E. (2d) 654)

*J. Reuben Long, Esquire,* of Conway, *for Defendant-Appellant,*

164

*Messrs. Leonard C. Williamson, Sol.,* of Aiken, and *Randolph Murdaugh, Sol.,* of Hampton, *for Respondent,* 

March 16, 1972.

Bussey, Justice:

Appellant was convicted of violating Sec. 8-176 of the South Carolina Code of Laws, commonly known as the fraudulent check statute. He appeals, asserting that the court should have directed a verdict of not guilty. We agree with his contention and reverse.

The State's case is predicated on the completely novel theory that a check, which admittedly was not a fraudulent one at the time uttered, became a fraudulent one, in violation of the statute, by the happenstance of subsequent events, not at all contemplated, as far as the record shows, by either the maker or the payee of the check.

Appellant McCord was engaged in the wholesale purchase and sale of livestock. For some fifteen years prior to November, 1970, he had been purchasing livestock from Herndon's Stockyard, Inc., at Ehrhardt, South Carolina, which held sales on each Monday. The customary method of doing business between the parties was that McCord would send a buyer to the sale on Monday who bought on credit, the bill being sent to McCord which he usually paid by check by the end of the week. On some occasions, two weeks credit was extended.

On Monday, November 23, 1970, McCord purchased from Herndon, on credit as usual, livestock of the value of $7,444.86. On November 27, McCord issued his check therefor, drawn on the Conway branch of the C & S Bank, and

mailed it to Herndon who deposited it on November 28. Such check reached the bank apparently between December 1 and December 4, and was not paid. The State candidly admits that, insofar as the sale of November 23 was concerned, the check was not a fraudulent one within the contemplation of the statute, since it was issued in payment of a preexisting debt. We add that the bank records rather clearly reflect that McCord, as of November 27, had funds on deposit which were more than sufficient to pay such check had it been presented before the end of November, 1970.

The record before us shows that the bank involved maintained its records by IBM computer and did not maintain a daily ledger record. Its records, however, showed total deposits by McCord for the month of November of $520,901.27; his balance on November 1 being $16,177.38, and on November 30, $49,555.94. By December 4, McCord's balance had been dissipated and he had an overdraft instead, all as a result of checks in the total amount of approximately $50,000.00, drawn by one R. D. Martin and deposited by McCord, having been returned unpaid. Martin was apparently a substantial customer of McCord's; his checks had theretofore been quite satisfactory to the bank, and the bank had accordingly allowed McCord to draw against Martin checks before such were cleared and paid. The record here contains no evidence tending to prove that McCord had any reason to believe that Martin was in financial difficulty, but McCord, himself, has obviously been insolvent since nonpayment of the Martin checks.

On November 30, 1970, Herndon sold to McCord additional livestock of the value of $8,465.33, again on credit as usual, most of which was sold at the special instance and request of Herndon who called McCord long distance soliciting his order therefor. The invoice for this latter sale had not been paid and Herndon contends that such would not have been sold had it been known by Herndon that the check of November 27 would not be paid when it ultimately

reached the bank. The State's case, therefore, is predicated solely on the theory that McCord, on November 30, obtained additional credit by virtue of the check of November 27, and that he thus violated the statute. Such contention is, we think, clearly untenable for more than one reason.

Of course, had Mr. Herndon been able to foresee the subsequent events which occurred, he naturally would not have called McCord and solicited his purchase of livestock for which McCord could not thereafter pay. Herndon was frank to admit, however, that he would have made the November 30 sale on credit, even if there had been no sale on the preceding Monday or check tendered in payment therefor. The check of November 27 was not mentioned in the conversation between Herndon and McCord, there obviously being no reason then for it to be mentioned by Herndon, and, as far as the record goes, no reason for such to be mentioned by McCord. The only reasonable inference from the evidence is, we think, that the November 30 sale was made without any thought of or reference to the check of November 27, by either party.

It is elementary that criminal statutes have to be strictly construed. We quote the pertinent portions of the statute which McCord is charged with violating, Sec. 8-176, as it now appears in the supplement to the 1962 Code,

"It shall be unlawful for any person, with intent to defraud, * * * todraw, make, utter, issue or deliver * * * any check * * * for the payment of money * * * whether given to obtain money, services, credit or property of any kind or nature whatever, * * * *when at the time of drawing, making, uttering, issuing or delivering such check* * * * the maker * * * does not have sufficient funds on deposit * * * to pay the same on presentation. * * * This section shall not apply to * * * any check given only in * * * payment of a preexisting debt, * * *." (Emphasis added.)

The evidence simply fails to disclose any conduct by McCord in violation of the literal language of the Code section. Whether or not a check is a fraudulent one in violation of this Code section has to be determined in the light of the facts existing "at the time of drawing, making, uttering, issuing or delivering such check." The check here involved was clearly not a fraudulent one at the time of its issuance and delivery, for two reasons. It was in payment of a pre-existing debt and sufficient funds were then on deposit to pay the same. The statute simply does not contain any language which would make criminal the subsequent conduct of McCord in agreeing to purchase, at the instance of Herndon, additional livestock on credit as usual.

On or about January 4, 1971, Herndon, pursuant to Code Sec. 8-177, gave McCord written notice of the nonpayment of the check involved, and such check still remains unpaid. The State's case, however, is not aided or supported by the presumption arising under the provisions of Sec. 8-177, since that section applies only to checks within the meaning of Sec. 8-176. *State v. Brazzell,* 248 S. C. 188, 149 S. E. (2d) 339.

Reversed.

Moss, C. J., and Lewis, Brailsford and Littlejohn, JJ., concur.