18852

The STATE, Respondent, v. Annis W. HUTTO, Appellant

(165 S. E. (2d) 72)

*Messrs. E. Pickens Rish* and *A. Frank Lever, Jr.,* of Lexington, for *Appellant,*

38

*Messrs. Daniel R. McLeod, Attorney General,* and *M. J. Bowen, Jr.* and *Russell W. Templeton, Assistant Attorneys General,* of Columbia and *Hubert E. Long, Solicitor,* of Lexington, *for Respondent,*

December 13, 1968.

LEWIS, Justice.

Defendant has appealed from her conviction, under Section 16-83 of the 1962 Code of Laws, of the crime of abortion, and from the revocation of a prior probationary sentence imposed for a similar offense.

The first questions to be decided concern the form of the indictment and sufficiency of the proof thereunder. Sections 16-82 and 16-83 of the 1962 Code of Laws deal with separate and distinct offenses of abortion. Section 16-82 "is directed to a case where a pregnant woman is aborted, or attempted to be aborted, and dies by reason thereof, or where a woman 'quick with child' is aborted, or attempted to be aborted, and either the woman or child dies." Section 16-83 "is directed to a case where a woman is aborted, or attempted to be aborted in the early stages of pregnancy and prior to the time when it could be said that she was 'quick with child,' * * *." *State v. Steadman,* 214 S. C. 1, 51 S. E. (2d) 91. In other words, to constitute the offense under Section 16-82 it must be shown that death resulted from the abortion; while Section 16-83 covers abortion not resulting in death.

The indictment in this case charged that defendant did "wilfully, unlawfully and feloniously administer to (the prosecutrix), a woman then with child, and did prescribe and procure her to take medicine, substances and drugs, and did employ and advise the use and employment of certain

instruments and other means of force, by and upon the said (prosecutrix) with intent thereby to cause and procure the miscarriage, abortion and premature labor of and by the said (prosecutrix) ; and as a result of the matter and things hereinbefore alleged, the miscarriage, abortion and premature labor of the said (prosecutrix) did result therefrom, and that as a consequence of those matters and things hereinbefore alleged, death to the unborn child of (prosecutrix) did result in whole or in part therefrom."

At the close of the State's testimony, defendant moved to quash the indictment and also for a directed verdict of not guilty upon the ground that the State had presented no testimony to show that death resulted to an unborn child within the meaning of Section 16-82, taking the position that the indictment charged only an offense under that section. The State conceded that there was no proof of death resulting from the abortion and at the same time moved to amend the indictment by striking therefrom the last portion which alleged that death resulted to an unborn child. The trial judge granted the State's motion to amend and denied the motions of the defendant, sustaining the State's contention that the indictment alleged in one count an offense under both Section 16-82 and 16-83 and that no prejudice resulted to the defendant from the elimination of that charge as to which the proof failed.

No question is presented as to the sufficiency of the proof to sustain a conviction under Section 16-83, nor as to the sufficiency of the indictment as amended to allege an offense under that section. The basic contention of defendant is that the indictment charged *only* an offense under Section 16-82 and that the action of the trial judge in granting the State's motion to amend amounted to changing the charge to another distinct offense. There is no merit in this contention.

While the indictment contained only one count, a violation of both Section 16-82 and 16-83 was alleged. It is properly conceded that the indictment, prior to amendment, included a charge of the violation of Section 16-82 since it was alleged

that death resulted from the alleged abortion. Due to the similarity in the two offenses, allegations sufficient to charge a violation of Section 16-82 were also sufficient to include a charge of the violation of Section 16-83.

The similarity in the elements necessary to constitute violations of the two sections was pointed out in *State v. Steadman, supra.* The indictment in Steadman contained two counts, the first charging a violation of Section 16-82 and the second a violation of Section 16-83. The jury found the defendant guilty under the first count but the verdict was silent as to the second. Upon appeal this court concluded that the evidence was insufficient to sustain a verdict of guilty on the first count (Section 16-82) because of the absence of proof that the abortion resulted in the death of an "unborn child." Although the verdict was silent as to the guilt of the defendant under the second count (Section 16-83), the court remanded the case for a new trial on that count, basing its decision on the close similarity in the two offenses. In doing so, the court stated: "Where there are several counts in an indictment charging separate and different offenses, a verdict of guilty upon one count ordinarly amounts to an acquittal upon the remaining counts concerning which the verdict is silent, but this general rule does not apply to the situation before us. When the jury found appellant guilty of violating Section 1112 (now 16-82), that body necessarily concluded that the State had established all the elements essential to a conviction under Section 1113 (now 16-83). Stated differently, a verdict of guilty on the first count would be entirely inconsistent with a verdict of acquittal on the second count. There is no basis to support an inference of an implied acquittal on count two from a verdict of guilty on count one."

Certainly, if, as held in Steadman, proof of guilt under Section 16-82 necessarily established all the elements essential to a conviction under Section 16-83, a count in an indictment charging all of the elements of 16-82 would necessarily allege all elements of the offense

under 16-83. The amendment allowed in this case added nothing to the indictment. It simply eliminated the clause which alleged the death of the child, leaving all other allegations as they were. This did not allege a new offense but only had the effect of removing from the indictment the charge of a violation of Section 16-82 which had been jumbled in one count with a charge under Section 16-83.

While defendant might have objected to the indictment on the ground that allegations charging two separate offenses were jumbled in one count, such objection was waived by the failure to interpose it before the jury was sworn as required by Section 17-409 of the 1962 Code of Laws. *State v. Redmond,* 150 S. C. 452, 148 S. E. 474; *State v. Jacobs,* 238 S. C. 234, 119 S. E. (2d) 735.

The crime of abortion as set forth in Section 16-83 was charged in the original indictment and defendant's conviction thereunder was sustained by the evidence.

The defendant next contends that she was prejudiced by remarks of the trial judge on two occasions during the trial. The first concerned a suggestion made by the trial judge to the solicitor relative to additional questions to ask a witness. No objection was made by defendant during the trial  to such remarks and the failure to do so constitutes a waiver of the alleged error. *Parks v. Morris Homes Corp.,* 245 S. C. 461, 141 S. E. (2d) 129; *State v. Rickenbaker,* 187 S. C. 448, 198 S. E. 43.

The second instance of alleged prejudicial remarks by the trial judge occurred during additional instructions to the jury. The jury had been recalled to the courtroom after they had deliberated approximately two and one-half hours and the judge commented on the duties of the jury to weight the testimony of the witnesses called by the parties. After stating that the State had "put on the stand certain witnesses," the judge remarked "Now, the defense called witnesses in this case, only one witness, the defendant,

but likewise you gentlemen had an opportunity to listen to the direct examination and to listen to the cross examination and then form an opinion as to what the witness said." The defendant contends that the statement by the trial judge that the defense had called "only one witness" was prejudicial because it indicated to the jury that "the trial judge felt the weight of testimony was in favor of the State." The statement that the defense had called "only one witness" was true. It is equally clear that, when the statement is read in context, it was not a comment upon the failure of defendant to call more than one witness but simply a correction of the immediately preceding statement that the defense had "called witnesses." The jury had been previously instructed that they were not concerned with the number of witnesses but only with their credibility. When the language in question is construed in context with the remainder of the charge, as we are required to do, it readily appears that no prejudice resulted to defendant.

The next exception charges error in the admission in evidence of a bank loan payment book allegedly representing a loan obtained to pay for the abortion performed by the defendant. The individual, by whom the prosecutrix became pregnant, testified without objection that he obtained a loan from the bank for the purpose of paying defendant for performing the abortion. The loan payment book, issued to the witness by the bank, was admitted in evidence over the objection of the defendant. The defendant contends that, since the book did not show the purpose of the loan, it was irrelevant because there was no connection established between it and the fact sought to be proved.

The admission of evidence is largely within the discretion of the trial judge and his rulings thereon will not be disturbed in the absence of a showing of probable prejudicial error. The witness testified without objection that he borrowed the money from the particular bank to pay for the abortion and that it was used for such purpose. The admission of the bank loan payment book, issued

in connection with such loan and identified by the witness, could not have prejudiced the defendant in view of the other testimony concerning the loan, which was admitted without objection.

The last assignment of error in the trial concerns a portion of the argument of the solicitor to the jury, in which he, in commenting upon the nature of the charges against the defendant, made the following remarks:

"* * *, We're not proving the death of the child, we are only concerned in this case—since the doctor said 'in his opinion the child was not capable of outside existence had it been born at that moment' * * * she is only, therefore, charged with the crime of using an instrument or means to bring about an abortion or a miscarriage, as doctors say we laymen refer to it, bringing about an unnatural miscarriage and the death of a child before it's able to ever get on the outside and go, not actually murdering or killing the little child. Morally, is there any difference, though? Is there any difference between—."

Objection to the foregoing argument was overruled by the trial judge with the comment, in the presence of the jury, that "the jury * * * will render a decision in the case under the testimony and after having heard the arguments of the attorneys and the charge of the court." Thereafter, the jury was instructed as to their duties and the elements of the offense charged. The defendant contends that the reference in the foregoing argument to "not murdering or killing the little child," followed by the question: "Morally is there any difference, though?," constituted an appeal to the sympathy of the jury and was highly prejudicial.

The question of whether the argument was improper or prejudicial was, under our decisions, a matter addressed largely to the sound discretion of the trial judge, and his ruling as to the prejudicial effect of the argument will not be disturbed in the absence of a showing of an abuse of such discretion. The remarks of the solicitor were

apparently made in connection with an explanation of the charge against the defendant. The trial judge was present, heard the entire argument, and was in a better position than we to pass upon its effect. In view of these factors and in the light of the clear instructions by the court as to the nature and elements of the offense, we cannot say that the ruling of the trial judge with reference to the argument in question constituted an abuse of discretion.

The last exception questions the jurisdiction of the lower court to revoke a prior probationary sentence imposed on defendant. This question was not raised in the court below and is presented for the first time on appeal. The present offense was committed on May 29, 1965. At that time defendant was under a four year probationary sentence for a similar violation committed in 1961. That sentence expired on September 6, 1965. Defendant was convicted in this case on January 21, 1966 and her probationary sentence was revoked on that date, approximately four and · one-half months after the probation expired. The record before us fails to disclose whether a warrant was ever issued charging defendant with a violation of the conditions of her probation as provided for in Section 55-595 of the 1962 Code of Laws.

The defendant now contends that, in the absence of a showing that a warrant was issued during the probationary period charging the defendant with a violation of her probation, the lower court was without jurisdiction to revoke the sentence after the period of probation had ended. We agree.

Section 55-595 provides, in part, that "at any time *during the period of probation* or suspension of sentence, the court, * * *, may issue or cause the issuing of a warrant and cause the defendant to be arrested for violating any of the conditions of probation or suspension of sentence." (Emphasis added.) This statute authorizes the court to issue or cause the issuing of a warrant only during the period of probation and, in the absence of the timely issuance of such warrant, the court is without authority to revoke the proba-

tion after the probationary period has passed, even though the violation occurred during such period. In referring to the provisions of the statute with reference to the requirement that the warrant be issued during the period of probation, the court stated in *Lovell v. State,* 223 S. C. 112, 74 S. E. (2d) 570: "It is only provided that during this period the warrant shall be issued, which is the pertinent jurisdictional fact."

In this case, while the violation occurred during probation, revocation did not take place until the probationary period had expired. Since there was no showing that a warrant was issued "during the period of probation", the court was without authority to revoke the probation and impose a sentence thereunder after the probationary period had ended.

The State takes the position however that, since the jurisdiction of the court to revoke the probation was not challenged in the lower court, the question can not now be raised for the first time on appeal. We think that the question goes to the subject-matter and may be raised at any stage of the proceeding.

The issuance of a warrant within the probationary period was, under the statute, necessary to continue the jurisdiction of the court and could not be dispensed with. Therefore, it was necessary that there be proof of the statutory requirement, and in the absence of such the order of revocation was void. See *Ex Parte Hart,* 186 S. C. 125, 195 S. E. 253.

The order revoking the prior probationary sentence of defendant is accordingly reversed, but in all other respects the judgment under appeal is affirmed.

Moss, C. J., and BUSSEY and LITTLEJOHN, JJ., concur.

CLARENCE E. SINGLETARY, Acting Associate Justice, disqualified.