# 19665

The STATE, Respondent, v. Linda A. RUTLEDGE, Appellant
(198 S. E. (2d) 250)

Messrs. *Albert Q. Taylor, Jr.,* of *Leatherwood, Walker, Todd & Mann,* and *B. C. Thomason, Jr.,* of *Love, Thornton, Arnold & Thomason,* Greenville, *for Appellant,* cite:

*Messrs. Thomas W. Greene, Sol.,* of Greenville, *Donald V. Myers,* and *Dudley Saleeby, Jr., Asst. Attys. Gen.,* of Columbia, *for Respondent,* cite:

July 18, 1973.

BRAILSFORD, Justice:

Linda A. Rutledge appeals from her conviction of the murder of her husband, Frank Rutledge, by means of a hired assassin. She charges error in the refusal of a severance, in the admission and exclusion of evidence and in the instructions to the jury. The sufficiency of the evidence to sustain the conviction is manifest and goes unchallenged.

Frank Rutledge, while standing outside a nightclub owned by him on White Horse Road in Greenville County, known as the Brass Monkey, on the night of September 18, 1971, was shot from behind.

Rutledge also owned a liquor store in or near the City of Greenville. His wife assisted him in both businesses. The four persons in addition to Mrs. Rutledge, who are referred to in this paragraph, were all charged with complicity

in the murder. Leroy Hailstock was manager of the Brass Monkey and was a daytime employee at the liquor store. Sale of liquor to bootleggers in and around Greenville was a big part of Rutledge's liquor business, and Hailstock made deliveries to these customers. Jerry Joe Henderson (the assassin) occasionally made deliveries of liquor for Rutledge, and frequented the Brass Monkey at night. Accompanied by Wayne Cook, he went to the liquor store at about noon on September 18, 1971. According to his testimony, he had a conversation with Mrs. Rutledge about killing her husband. This was one of a series of conversations extending back to July, during which he had agreed to kill Rutledge upon securing a suitable weapon. She told him that there was someone she wanted him to meet at the club that evening. Again accompanied by Cook, he went to the Brass Monkey, as directed by Mrs. Rutledge. Kirby Green was an habitué of the club, and the State's testimony tended to establish that he was Mrs. Rutledge's paramour. There was some testimony indicating that Green was the person whom Mrs. Rutledge wanted Henderson to meet on the evening in question.

When Henderson encountered Hailstock and Green at the club, the former gave him a pistol, and according to Henderson's testimony, the latter gave him instructions (which were not followed) as to how the killing should be accomplished. Later in the evening someone asked for Rutledge, and Hailstock told his employer that he was wanted outside. When Rutledge responded to this message, Henderson killed him by shooting him in the back of the head.

An indictment was returned by the grand jury charging Mrs. Rutledge, Hailstock and Henderson with murder and charging these three defendants and Green and Cook with conspiracy to commit murder. Prior to trial, a *nolle prosequi* was entered as to the conspiracy charge against Cook. The same disposition was made of the murder charge against Hailstock, and he pled guilty to the conspiracy count. Henderson pled guilty to murder. This left for trial the murder charge against Mrs. Rutledge and the conspiracy

charge against her and the defendant Green. The three defendants whose cases were disposed of without a trial testified for the State.

The first ground of appeal charges that the court erred in refusing appellant's motion that she be allowed a separate trial from Kirby Green. Recognizing that disposition of such a motion is discretionary, appellant contends that the judge abused his discretion by not recognizing and relieving her from the extreme prejudice which resulted from a joint trial. We find no merit. The prejudice of which appellant complains was simply inherent in the facts of the case and not in the joint trial. A separate trial would have provided neither escape from, nor mitigation of, whatever prejudice was engendered against her by the fact that she and her husband were of a different race from that of her alleged lover. The testimony of Hailstock and Henderson, which branded her in the eyes of the jury as the instigator of her husband's death, would have been equally admissible, and equally prejudicial, on a separate trial. The argument that Green's release at the conclusion of the State's case by a directed verdict, left her "holding the bag in the eyes of the jury" is farfetched as is the final argument that, somehow, her trial with Green, under all of the facts, raised an implication of guilt by association.

The next point argued is that the court erred in admitting into evidence, before the conspiracy had been established *prima facie,* testimony as to declarations of Henderson in furtherance of it. There is no doubt that the evidence offered by the State before closing its case was sufficient to establish the conspiracy. Hence, the error assigned relates merely to the order of proof. The trial judge necessarily has a broad latitude in the conduct of the trial, and the ruling complained of was peculiarly within his discretion. We find no error, certainly none to appellant's prejudice.

It is also argued under this subdivision of the brief that certain testimony of Henderson, as to what Hailstock told him that appellant and Green had said about the payment of the balance of the money promised to him, should have been excluded as hearsay. The point is not properly before us because the testimony was not objected to on this ground at the trial, nor is it suggested by appellant's statement of any question on appeal.

Appellant next assigns error "in prohibiting cross examination of State's witnesses as to deceased's illegal activities," and argues that this ruling denied her the opportunity to show that others had motives for taking his life. While the judge did curtail the cross examination of one witness on the ground that decedent's character and reputation were not in issue, we need not consider whether this was error. The subject was adequately covered elsewhere in the record, which paints the deceased as a ruthless man of violence, always armed, a fence of stolen property, and a principal supplier of liquor to the bootleg trade in the Greenville area. If a dollar was owed him "(he) got his money," according to one witness; he "used people," according to another. In addition, there was testimony that during the year before his death Frank received anonymous threats, and a fire of unknown origin occurred at his home. At about the same time, fires occurred at the homes of three of his liquor customers and at the place of business of another one. If there was error, in this respect, it did not deprive appellant of full opportunity to argue that Rutledge had so conducted himself as to incur the enmity of many persons. We find no prejudice.

Appellant charges that the court erred "in allowing the State on cross examination to inject the (defendant's) reputation and character when (such) had not been put in issue by this defendant." The record discloses that no such objection was made to the cross examination of appellant. Furthermore, much of counsel's argu-

ment on the point appears hypercritical, and, in large part, the cross examination now complained of was responsive to the testimony of the witness on direct examination. We have carefully considered the cross examination of appellant, and find nothing therein which would have warranted, certainly nothing which required, the intervention of the court.

Appellant's fifth ground charges that she was "denied a fair and impartial trial under all the facts and circumstances of the case." The argument is largely a rehash of points already considered. The further claim that, under the circumstances here present, it was unfair to convict appellant on the testimony of Hailstock and Henderson actually goes to the weight to be given their testimony, and affords no basis for relief here.

The case went to the jury at 7:30 P. M., Friday, July 28. After lengthy deliberations extending into the next day, the judge, at the request of the jury, again instructed it as to the law of the case. Whereupon, the following colloquy took place:

"Foreman: We would just like to apologize for the long delay.

"The Court: It's real complicated for any jury and I want to thank you. It's an important job to deliberate with each other and swap ideas.

"Jury out: 12:55 P. M.

"The Court: Anything further for the State or the Defendant? No exceptions or additions?

"Solicitor Wilkins: No, Your Honor.

"Mr. Taylor: No, Your Honor."

Appellant now assigns as her final ground of error the inadequacy of the instructions to inform "the jury as to their proper duty as individual jurors in deliberating and arriving at a verdict. . . ." The brief complains of the judge's failure "to stress to each juror the importance of his own individual opinion. . . ."

The supplementary instructions reminded the jury that its verdict must be unanimous and contained nothing even remotely coercive. At least in the absence of a request therefor, the court did not err in failing to give more specific instructions of the tenor now insisted upon.

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and LITTLEJOHN, JJ., concur.