### 21398

The STATE, Respondent, v. Charles Edward HIOTT and Walter Edward Ruff, Appellants.

(276 S. E. (2d) 163)

74

*Staff Atty. David W. Carpenter*, of *S. C. Commission of Appellate Defense, Public Defender John M. Young* and *Deputy Public Defender W. Gaston Fairey*, Columbia, *for appellants.*

*Atty. Gen. Daniel R. McLeod, Asst. Attys. Gen. Kay G. Crowe, Lindy Pike Funkhouser* and *Russell D. Ghent* and *Sol. James C. Anders*, Columbia, *for respondent.*

March 3, 1981.

Defendants Charles Edward Hiott and Walter Edward Ruff appeal their conviction for murder, attempted armed robbery, and conspiracy. Each was sentenced to consecutive

terms of life imprisonment for murder, twenty years for attempted armed robbery, and five years for conspiracy.

In January 1979, Hiott and Ruff escaped from the Wateree Correctional Institution, whereupon arrest warrants were issued by a Sumter County magistrate for their recapture. A third arrest warrant was issued for Ruby Burt, alleged wife of Charles Hiott, for aiding in the escape.

On March 13, 1979, around 7 p. m., two men, wearing wigs and sunglasses, entered Nate's Pharmacy where pharmacist William Catoe and store clerk Donald Boan were on duty. One of the men asked Boan for toothbrushes, while the other proceeded towards Catoe in the rear. Boan was then forced behind the rear counter at gunpoint and ordered down on hands and knees beside Catoe, already on the floor. Catoe apparently panicked and attempted to run, whereupon he was shot in the back and killed. The two men immediately ran out the front door. A neighbor near the pharmacy, upon hearing barking dogs and police sirens, looked out her door and saw two men scrambling in the woods about twenty yards from her house. She observed one remove and drop his coat. Police later retrieved the coat, as well as a sweatshirt, handcuffs, wigs, and sunglasses.

Four days later, on March 17, 1979, police were called to 1003 Omega Drive, a Columbia residence rented to Charlene Porter[1]. Earlier that day, Hiott and Ruff had been identified on the premises by police, and a surveillance was established from a distance to observe their activities. Ruff was later seen entering his car, along with another male whose identity could not then be determined. The officers entered the house to arrest Hiott. Actually it developed that he was not there and was simultaneously being identified as the other person in the car and arrested along with Ruff at a convenience store. In searching for Hiott at the house, po-

---

[1] There were allegations that a common-law marriage existed between Porter and Ruff and evidence that they lived together at this address.

lice officers viewed various drugs and drug-related paraphernalia lying on an open table. Burt, Porter, and Alfred Hayes, present in the house when the officers entered, were arrested for violation of state drug laws. At that time, an officer went to the magistrate and obtained a search warrant for illegal drugs and for the handgun used in the killing.

Hiott, Ruff, Porter, Burt, and Hayes were subsequently indicted for various offenses. Burt and Porter later pled guilty to (1) harboring escaped convicts (Hiott and Ruff), (2) conspiracy, and (3) simple possession of marijuana (Burt)/valium (Porter); Hayes pled guilty to (1) and (2) above, and also to accessory before the fact to felony crime of common-law murder. Hiott and Ruff (hereafter referred to as defendants) were tried by jury and convicted.

Defendants have alleged prejudicial error by the trial judge in four respects:

(1) finding the search and seizure at 1003 Omega Drive to have been legal,

(2) admitting into evidence the drugs and gun seized at Omega Drive,

(3) permitting the jury to pass upon the charge of "attempted armed robbery," and

(4) upholding a lineup procedure and allowing an in-court identification.

## I. *SEARCH AND SEIZURE:*

Defendants argue that the entry and subsequent ▌ search of 1003 Omega Drive, resulting in the seizure of drugs and a handgun, was a violation of their Fourth and Fourteenth Amendment rights. We need not analyze the substance of their argument, since we hold at the outset that the defendants-escapees were not protected by the Fourth Amendment in this case.

In determining whether one may challenge the legality of a search and seizure, the United States Supreme Court has recently shifted away from a "standing" approach to an in-

quiry focusing directly on the substantive issue of whether the claimant possessed 'a legitimate expectation of privacy" in the area searched. *Rakas v. Illinois,* 439 U. S. 128, 99 S. Ct. 421, 58 L. Ed. (2d) 387 (1978); *Rawlings v. Kentucky,* —— U. S. ——, 100 S. Ct. 2556, 65 L. E. (2d) 633 (1980). We hold that defendants, escaped convicts at the time, had no legitimate expectation of privacy which the Fourth Amendment was designed to protect.

In *Jones v. United States,* 362 U. S. 257, 80 S. Ct. 725, 4 L. Ed. (2d) 697 (1960), the court made clear that a motion to suppress evidence obtained from the premises searched was not available to one *wrongfully on those premises.* As prison escapees, defendants obviously were not legitimately on the premises.

Defendants cannot validly argue that they had any legitimate expectation of privacy in the premises searched. As convicted prisoners serving at the Wateree Correctional Institute, they had only severely diminished rights.

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Bell v. Wolfish,* 441 U. S. 520, 99 S. Ct. 1861, 60 L. Ed. (2d) 447 (1979). *See, also, Lanza v. New York,* 370 U. S. 139, 82 S. Ct. 1218, 8 L. Ed. (2d) 384 (1962).

Once the defendants had escaped unlawfully from prison, they abandoned their only legitimate premises and surrendered any future legitimate expectation of privacy [2].

---

[2] *See Rakas v. Illinois, supra,* 100 S. Ct. at page 430, fn. 12:
"Obviously, however, a 'legitimate' expectation of privacy by definition means more than a subjective expectation of not being discovered. A burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as 'legitimate.' His presence, in the words of *Jones,* 362 U. S., at 267, 80 S. Ct., at 734, is 'wrongful'; his expectation is not 'one that society is prepared to recognize as "reasonable".' *Katz v. United States,* 389 U. S. 347, 361, 88 S. Ct. 507, 516, 19 L. Ed. (2d) 576 (1967) (Harlan, J., concurring)."

"It follows that appellant's Fourth Amendment rights were no greater as an escapee than they were while he was within the confines of the penitentiary. He had lost his constitutional protection against the invasion of his privacy and had no standing to object to a search of his [motel] room and his effects by the officers." *Robinson v. State*, 312 So. (2d) 15 (Miss. 1975).

That the Fourth Amendment rights of others, besides Hiott and Ruff, were involved is of no comfort to these defendants. The law is well-settled that these rights are personal and one person may not claim the rights of another. *United States v. Payner,* —— U. S. ——, 100 S. Ct. 2439, 65 L. Ed. (2d) 468 (1980).

For the above reasons, the search and seizure at issue did not violate any of defendants' Fourth Amendment rights.

## II. *ADMISSIBILITY OF DRUGS:*

At trial, the State sought to introduce into evidence various drugs and drug-related paraphernalia seized from 1003 Omega Drive and also from a house trailer where Alfred Hayes, Hiott and Burt had apparently been living. Defendants objected on the ground that these items were nothing more than evidence of prior misconduct not sufficiently relevant to or necessary for the present prosecution. The drugs, but not the paraphernalia, were subsequently admitted.

Hiott, Ruff, Burt, Hayes, and Porter were all charged with conspiracy to rob the pharmacy. The trial judge considered the drugs and drug paraphernalia relevant to the purpose and preparation of the conspiracy in light of (1) confiscation of numerous drugs from the two premises (1003 Omega Drive and the trailer) where the five parties apparently lived, (2) choosing a drug store to rob, (3) forcing the pharmacist to lie on hands and knees directly in front of the drug counter, and (4) fleeing the store without directing attentiton to the cash register. Before admitting the

drugs for use against Hiott and Ruff, he required that proper foundation first be established by producing sufficient evidence showing a conspiracy, in fact, existed involving Hiott and Ruff. This foundation was then established to the trial judge's satisfaction by the eye-witness identification of Hiott and Ruff as the perpetrators and by testimony of several salespersons in Columbia identifying Hayes, Burt and Porter as having purchased, on or just prior to the date of the killing, wigs and handcuffs similar to those found near the scene.

It is well-settled that the reception or exclusion of evidence is left largely to the discretion of the trial judge, whose decision will not be disturbed absent an abuse. *State v. Groome,* S. C. 262, S. E. (2d) 31 (1980). Though the drugs themselves were admitted, the trial judge excluded all drug-related paraphernalia on the basis that its prejudicial effect outweighed its probative value. He consistently asserted that the drugs were not being admitted as evidence of prior criminal activity and he imposed limitations on their admission to assure this positon.

We find no abuse of dscretion by the trial judge in his rulings on this evidence. He correctly applied the law to the facts before him and made considerable effort to assure that the evidence was considered in the proper light. No error was committed.

## III. *ADEQUACY OF INDICTMENT:*

The indictment for armed robbery originally charged defendants with "feloniously tak[ing] . . . goods or monies of the said *John Nates Druggist, Inc.,* such goods or monies being described: *a toothbrush."* The trial judge granted defendants' motion for directed verdict for lack of sufficient evidence from which a jury could infer a toothbrush was stolen. He then struck "a toothbrush" from the indictment and ruled that the remainder of the indictment, in light of

other evidence, would be sent to the jury for attempted armed robbery of "goods and monies." Defendants contend, for two reasons, that the original indictment could not support the charge upon which the jury ultimately deliberated: first, that attempted armed robbery is not a lesser-included offense of armed robbery and, second, that once "a toothbrush" was struck from the original indictment, it could not thereafter survive so as to charge the wrongful taking of "goods and monies."

We follow the general rule that where an indictment charges an offense which cannot be committed without also committing a lesser offense, the defendant may be convicted of the lesser one even though acquitted of the greater. 2 *Wharton's Criminal Procedure* (12th ed.) §§ 292, 375; *State v. Summers,* S. C., 274 S. E. (2d) 427 (1981). Defendants contend that an attempted offense is not lesser included in the completed offense because incompletion of the offense is, in itself, a separate and distinct element. Defendants cite no support for this position and we find no logic in it. We find the following statements controlling and applicable herein:

"An attempt to commit robbery has been defined as the doing of acts toward the commission of robbery, and with such intent, but falling short of actual perpetration of the completed offense; . . . ." *77 C. J. S. Robbery* § 60.

"[I]t must appear that the circumstances were such that the crime would have been robbery had the attempt been successful." *77 C. J. S. Robbery* § 61.

Under the circumstances before us, there can be little doubt that only the attempted escape of the pharmacist prevented completion of the criminal act, which crime, at that point, was clearly susceptible of being a robbery. In § 16-11-330, *Code of Laws of South Carolina* (1976), robbery and attempted robbery while armed with a deadly weapon are dealt with together.

Defendants' second argument hinges on the proposition that the use of a "a toothbrush" restricted the indictment from including any other property. Under the facts before us, we disagree.

A variance between pleading and proof is not material where the matter alleged is not an element of the offense. *Wharton's, supra,* § 505. Rarely is the property sought of real consequence when only an attempt is involved. The gravamen of a robbery charge is a taking from the person or immediate presence of another by violence or intimidation. *Young v. State,* 259 S. C. 383, 192 S. E. (2d) 212 (1972).

However, a fundamental principle of law is that an accused be given sufficient notice of the crime for which he is charged. The purpose is actually threefold: (1) the defendant may adequately prepare his defense; (2) the court may know what judgment to pronounce; and (3) the acquittal or conviction may be effectively placed in bar to subsequent convictions. *See State v. Crenshaw,* S. C., 266 S. E. (2d) (1980). For these reasons, an indictment for robbery must sufficiently describe the property taken. Of necessity, however, no better description is required than the circumstances permit. 77 C. J. S. *Robbery* § 36. We have here a situation where two suspects, disguised and armed, entered a pharmacy and mentioned toothbrushes. Subsequently, the suspects forced the only persons present to lie on the floor. Before the suspects could proceed with their mission, thereby identifying the true object of their greed, they shot and killed a fleeing employee and immediately fled themselves.

While "a toothbrush" properly was stricken from the indictment for lack of proof, we cannot find, under these circumstances, that the indictment was necessarily restricted to that one object.

"It is no valid objection to an indictment that the description of the property in respect to which the offense is charged to have been committed is broad enough to include more than one specific article." *Dunbar v. United States,* 156 U. S. 185, 15 S. Ct. 325, 39 L. Ed. 390 (1895).

Furthermore, we do not think the remaining verbiage, "goods and monies," was prejudicial or unfair to defendants for lack of sufficient description.

*"Description of Property.* It is not necessary particularly to describe the property accused intended to take, or to allege the value of the property." 17 C. J. S. *Robbery* § 68. *See State v. Haney,* 257 S. C. 89, 184 S. E. (2d) 344 (1971).

There was no apparent confusion as to what judgment could be pronounced. The trial judge correctly instructed the jury as follows:

"I have ruled in this case as a matter of law that the State did not meet its burden of proving to you ladies and gentlemen of the jury beyond a reasonable doubt the taking of goods or monies: and, therefore, the crime of armed robbery failed in its proof. So you are no longer concerned with whether or not Charles Edward Hiott or Walter Edward Ruff committed the crime of armed robbery.

"I am going to submit for your consideration, and counsel will be arguing this to you, as to whether or not on the 13th day of March, 1979, Charles Edward Hiott and Walter Edward Ruff attempted to rob the John Nates Druggist, Inc., while armed with a deadly weapon. I will explain this in great detail to you at a later time, the difference in that . . ."

Finally, the conviction for attempted armed robbery may be effectively pled by defendants to bar later prosecution for the same offense, as determined, generally by the evidence necessary to support the later charge. *State v. Hoffman,* 257 S. C. 461, 186 S. E. (2d) 421 (1972) ; *State v. Kirby,* 269 S. C. 25, 236 S. E. (2d) 33 (1977) ; *see, also State v. Langford,* 55 S. C. 322, 33 S. E. 370 (1899).

## IV. IDENTIFICATION BY STORE CLERK:

The defendants lastly submit that a pretrial identification line-up held on August 19 (two days after arrest and six days after the shooting) was conducted in an impermissibly suggestive way such that the testimony of Donald Boan, the only eye-witness to the shooting, should have been suppressed. A lengthy hearing was held outside the presence of the jury. After taking all of the testimony, the judge ruled that Boan would be permitted to identify the defendants for the jury. Proper exceptions have been filed and the defendants asked for a new trial based on the judge's ruling.

Two days after the arrest, but before indictment, a series of line-ups were conducted and viewed by several persons, including Boan. At the assistant solicitor's request, Assistant Public Defender Venable Vermont, Jr. was present to protect the interests of the defendants. A separate line-up, consisting of six persons, was arranged for each defendant. Then, at the suggestion of Mr. Vermont, changes were made so as to assure fairness. Boan was exposed to each line-up separately, after which he was directed to another room where he gave a statement (which was recorded) to Police Officer McLean. McLean, who had not seen and did not know the make-up of the line-ups, wrote down Boan's statement in his presence. Neither the assistant solicitor nor Mr. Vermont was present when Boan gave his reaction to McLean. The statements, as shown by the evidence, reveal that Boan identified Hiott from one line-up and selected Ruff and another person from the second line-up.

The defendants submit that the absence of the public defender when Boan made his statement to McLean was a denial of their constitutional right to counsel. There can be no doubt but that an accused is entitled to counsel at all critical stages of the criminal prosecution. *United States v. Wade,* 388 U. S. 218, 87 S. Ct. 1926, 18 L. Ed. (2d) 1149 (1967), and *Gilbert v. California,* 388 U. S. 263,

87 S. Ct. 1951, 18 L. Ed. (2d) 1173 (1967). The United States Supreme Court has not undertaken to specify just when "criminal proceedings" are initiated because of the differences in state procedures. However, in *Kirby v. Illinois,* 406 U. S. 682, 92 S. Ct. 1877, 32 L. Ed. (2d) 411 (1972), the Court held that the State must have committed itself to prosecute the accused before he may invoke his Sixth Amendment right to counsel.

At the time of the line-up here, the defendants were being held on the escape charge. As indicated by a search warrant procured two days previously, they were obviously suspected of the killing at the drug store, but no formal proceedings had been initiated.

It is undisputed that the State had arranged for defense counsel to be present at the line-up. Mr. Vermont said, as shown by his testimony on cross-examination:

"Q. Did you feel these were fair line-ups?

"A. I felt they were generally fair. The first lineup, as I say, I considered it much better.

"Q. Did you voice any objection to any of the officers that there was anything unfair, not correct?

"A. I don't think I did within what I considered to be the scope of things that I could correct."

Finding that counsel was provided, we now reach the question of whether the fact that Boan gave his identification to McLean in a separate room in the absence of counsel for both the State and defense violated the defendants' constitutional rights, requiring the judge to hold that the in-court identification should have been suppressed. The reason for making the identification in the absence of counsel does not clearly appear in the rceord. While we think it better that the reactions of the identifying witness should more properly have been made in the presence of counsel for both the State and defendants, we do not think that such a procedure is *per se* violative of the defendants' rights.

The question which the trial judge had to determine as a basis for his suppression ruling was: Should Boan's identification testimony in open court be excludued because the line-up identification took place as described above? In making that determination, the judge had to decide whether there were any impermissible suggestions to which Boan was subjected. There is no dispute of facts on any relevant issue involved. The testimony of the assistant solicitor, Mr. Vermont, Mr. Boan, and Officer McLean, is consistent on all relevant points. Boan was brouguht into the identification room and observed the line-ups by looking through a glass window. Neither of the attorneys talked with him. He then went into the room with Officer McLean and; according to the testimony of both Boan and McLean, no suggestion was made. It is obvious that the judge was impressed by the showing made. He said:

"The Court: Gentlemen, first of all, I am satisfied from my review of State's Exhibit for identification 1 and State's Exhibit for identification 2 that this was certainly a constitutionally fair lineup. As a matter of fact, the Court when it first observed these two exhibits had difficulty picking out the two defendants and I have been in court with them for two weeks. As far as the fairness of the other subjects and so forth, I don't have any question as to the fact this lineup was conducted in as fair a manner as it could be done.

. . . .

I was impressed with his [Boan's] sincerity. I am impressed with his testimony, and I am deeming him to have identified these people in court from sources—origin independent of any suggestions by the State through conversations, any suggestions of the lineup. This is the first opportunity, as I understood his testimony, that he has ever seen either defendant, and he identified them immediately. I am satisfied with that identification. I am going to let him testify to such over your objections, of course, and you may cross examine him subject to your objections without making an issue of it on the record."

The judge was justified in finding that the in-court identification was clearly shown to be based upon the observations of Boan at the time of the crime. Boan testified that he stood face-to-face in the store with Hiott for about ten seconds, and generally viewed Ruff during the estimated two minutes they were in the store. He gave police officers a detailed description of the clothing and disguises worn, the general physical size, and certain facial characteristics which stood out in his mind, all of which were observed in a well-lighted store. The ruling on the suppression motion to the effect that Boan's in-court identification was clearly shown to be based upon an origin independent of any improper suggestion is well supported by the whole of the record.

The exceptions submitted to the court are without merit.

Remaining exceptions raised by defendants, but not argued or briefed, are deemed abandoned on appeal. *State v. Jones,* 273 S. C. 723, 259 S. E. (2d) 120 (1979).

Affirmed.

LEWIS, C. J., and NESS, GREGORY and HARWELL, JJ., concur.