### 21561

The STATE, Respondent, v. Bryan O'Neal SULLIVAN, James Charles Dugan, John Ray Etheridge, Ralph Dennis Nichols, Arnold Gene Sims, Lawrence Phillip Lamovec, William Russell Jackson, David Gaither Cochran, Millard Eugene Waites, James Ronald Kelly, George Alexander Gedra, Kenneth Warren Davidson, James Thurmond Kincade, Steven Gerald Schone and Stan White, Defendants, of Whom James Charles Dugan, Ralph Dennis Nichols, William Russell Jackson, George Alexander Gedra, Steven Gerald Schone and Stan White, are Appellants.

(282 S. E. (2d) 838)

40

*Robert B. Wallace,* Charleston, *John L. Weaver,* Florence, *Robert L. Kilgo,* Darlington, *Charles Porter* and *Francenia B. Heizer,* Columbia, and *John C. Lindsay,* Bennettsville, *for appellants.*

*Atty. Gen. Daniel R. McLeod, Asst. Attys. Gen. Kay G. Crowe, Lindy Pike Funkouser, Buford S. Mabry, Scott A.*

*Elliott* and *Vinton D. Lide,* Columbia, and *Sol. J. Dupre Miller,* Bennettsville, *for respondent.*

Sept. 14, 1981.

NESS, Justice:

Appellants James Charles Dugan, Ralph Dennis Nichols, George Alexander Gedra and Steven Gerald Schone were convicted of possession of marijuana with intent to distribute and conspiracy to possess marijuana with intent to distribute; appellants William Russell Jackson and Stan White were convicted on the one count of conspiracy to possess marijuana with intent to distribute. We affirm in part and reverse in part.

This is an extremely complex conspiracy and marijuana possession case. The September 1979 trial generated over 2500 pages of testimony and the appellants have taken 224 exceptions of error.

Indictment No. 79—GS—16—159 charges the conspiracy began on dates unknown, but including the period December 9, 1978 through and including January 17, 1979, alleging the appellants combined and conspired to possess and distribute marijuana in and around Darlington, South Carolina. Indictment No. 79—GS—16—158 charged the appellants (Dugan, Nichols, Gedra and Schone) with possession of marijuana with intent to distribute on or about January 17, 1979.

The facts indicate an intricate scheme to illegally import marijuana into South Carolina from Colombia, South America. William B. Mozingo, a SLED agent, was contacted by John Etheridge and asked to join a highly sophisticated drug smuggling operation known as "The Company." From December 9, 1978 until January 17, 1979, Agent Mozingo played the role of a corrupt law enforcement officer, while he worked undercover to obtain information about the illicit drug operation. On January 17, 1979, Agent Mozingo and other law enforcement officers arrested the appellants at the Dovesville Airport. They also seized more than 1300 pounds of marijuana and the twin engine Cessna airplane, which brought the marijuana into South Carolina.

The appellants have raised 224 exceptions, which in essence request that we retry the case *in toto*. However, sixty-six of the exceptions were not argued in appellants' brief and are thereby abandoned. *State v. Hiott,* S. C., 276 S. E. (2d) 163, 170 (1981).

Appellants first assert the trial judge erred in admitting evidence of illicit drug operations in other states, other countries in South Carolina and evidence of alleged bribery of law enforcement officers. We disagree.

The appellants contend reversal is mandated by the decision in *United States v. Vaught,* 485 F. (2d) 320 (4th Cir. 1973), which held the introduction of evidence regarding activity occurring prior to the formation and existence of the conspiracy was fatally prejudicial. Here, *Vaught* is not applicable as the evidence of illegal drug operations and bribery falls within the scope of the conspiracy for which appellants were indicted.

Appellants next assert the trial judge erred in admitting hearsay statements of alleged co-conspirators before the conspiracy was proven. We disagree.

In the law of conspiracy, there is a well-recognized exception to the rule against hearsay which permits the statements of one conspirator made during the pendency of the conspiracy, admissible against a co-conspirator, once prima facie evidence of a conspiracy is proved. Thereafter, the acts and declarations of any conspirator made during the conspiracy and in furtherance thereof are deemed to be the acts and declarations of every other conspirator and are admissible against all. *State v. Ferguson, et al.,* 221 S. C. 300, 70 S. E. (2d) 355 (1952).

In *Glasser v. United States,* 315 U. S. 60, 62 S. Ct. 457, 86 L. Ed. 680 (1942), the declarations of one conspirator made in furtherance of the objects of the conspiracy to a third party are admissible against all of the members, but only after proof that each defendant was a member of the conspiracy.

Under *Glasser* there was a preferred order of proof; nonhearsay which established membership in the conspiracy must precede the hearsay declarations. How-

ever, order of proof is discretionary with the trial judge and declarations made by a conspirator to a third party may be admitted in advance of evidence which would prima facie establish the existence of the conspiracy. *State v. Rutledge,* 261 S. C. 44, 198 S. E. (2d) 250 (1973); In accord: *United States v. Vaught, supra.*

Here, appellants Dugan, Nichols, Schone and Jackson ■ were connected to the conspiracy by evidence, other than and in addition to the hearsay declarations. Moreover, once a conspiracy has been established,

"[E]vidence establishing beyond a reasonable doubt a connection of a defendant with the conspiracy, even though the *connection is slight,* is sufficient to convict him with knowing participation in the conspiracy. *United States v. Dunn,* 564 F. (2d) 348, 357 (9th Cir. 1977)." *United States v. Jabara,* 618 F. (2d) 1319, 1328 (9th Cir. 1980).

Viewing the evidence in the light most favorable to the State, and drawing all reasonable inferences from the evidence in favor of the State, we conclude there was sufficient evidence to establish the conspiracy and appellants Dugan, Nichols, Schone and Jackson were members. See: *Jabara, supra.*

We have reviewed the record and find no competent ■■ evidence which connected appellants Gedra and White to the conspiracy. The hearsay declarations against these appellants should not have been considered by the jury and their convictions are reversed because of insufficient evidence. They took no part in any of the negotiations, were unknown to the officers, and apparently had no financial interest in the transaction. Mere association was all that was shown here, and that does not satisfy the tests. *United States v. Lopez,* 625 F. (2d) 889 (9th Cir. 1980).

Appellants next assert the trial court erred in ordering the indictments for conspiracy and possession be jointly tried. We disagree.

Where the offenses charged in separate indictments ■ are of the same general nature, involving connected transactions closely related in kind, place and character,

the trial judge has the authority, in his discretion, to order the indictments tried together over the objection of the defendant absent a showing that the defendant's substantive rights were violated. *State v. Williams*, 263 S. C. 290, 210 S. E. (2d) 298 (1974).

Appellants contend they were prejudiced by the introduction of hearsay evidence on the conspiracy indictment because it would not have been admissible if the possession charge would have been tried separately. However, it is not necessary for an indictment to charge conspiracy in order for the declarations of a conspirator to be admissible against other alleged co-conspirators. *State v. Blackwell, et al.*, 220 S. C. 342, 67 S. E. (2d) 684 (1951). Therefore, the declarations of the co-conspirators would have been admissible as an exception to the rule against hearsay on the substantive charge of possession of marijuana with intent to distribute. See: *State v. Wells*, 249 S. C. 249, 153 S. E. (2d) 904 (1967).

We have reviewed the record and find the trial judge did not abuse his discretion in ordering the indictments for conspiracy and possession with intent to distribute be tried together.

Appellants next assert it was reversible error for the State to attempt to introduce into evidence the written transcript of a taped conversation between Agent Mozingo and John Etheridge because appellants claim they were forced to prejudice their case by objecting to the admissibility of the statement. Appellants contend this left the jury with the impression they were withholding information. We hold it was a decision of trial strategy whether or not to object to the introduction of the written transcript and appellant cannot be heard to complain on appeal of alleged error they voluntarily committed at trial. *State v. Faulkner*, 274 S. C. 619, 266 S. E. (2d) 420, 422 (1980). This exception is without merit.

Appellants next assert the trial court erred in allowing testimony regarding alleged payment of bond fees and attorney fees by "The Company" as this constituted post-conspiracy declarations which are generally not admissible under the conspiracy exception to the rule against hearsay. We disagree.

Appellants did not make a contemporaneous objection to this testimony, therefore, cannot claim error on appeal. *State v. Atchison*, 268 S. C. 588, 235 S. E. (2d) 294 (1977). Moreover, the challenged testimony concerned a conversation between Etheridge and Agent Mozingo, in which Etheridge told Mozingo of the benefits of joining the conspiracy. Since the conversation was made in furtherance of the alleged conspiracy it was admissible under the hearsay exception. *Ferguson, supra.*

Appellants next contend the trial judge erred in referring to them as "conspirators" because this expressed an opinion concerning their guilt. We disagree.

The trial judge made it clear he was referring to the appellants as alleged conspirators when he denied their motion for a mistrial. Moreover, when the jury returned he gave a curative instruction which informed the jury that he was referring to the defendants as alleged conspirators.

In *State v. Britt*, 235 S. C. 395, 427, 111 S. E. (2d) 669 (1959), the Court held,
"[R]emarks made by the trial Judge in the course of a trial need not be confined in such narrow limits as to prevent him from stating his reasons for his rulings. . . ."
Here, the trial judge was informing counsel certain hearsay statements were being admitted into evidence because they were made by an alleged co-conspirator.

Appellants next assert the State used unsolicited responses to get prejudicial evidence before the jury. We disagree.

Appellants did not make a contemporaneous objection to this testimony and have waived their right to assert any error on appeal. *Atchison, supra.* Moreover, defense counsel asked Agent Powell on cross-examination whether the plastic was common place or specially made. This question opened the door for Powell's response that it was used inside the aircraft to set bales of marijuana on.

Appellants next argue the trial judge erred in refusing to sequester the State's witnesses because they could hear each others testimony and change theirs accordingly. We disagree.

A motion to sequester is addressed to the sound discretion of the trial judge and his ruling will not be disturbed absent an abuse of discretion. *State v. LaBarge*, 275 S. C. 168, 268 S. E. (2d) 278 (1980).

The mere opportunity for the State's witnesses to compare testimony is insufficient to compel sequestration. *State v. Tyner*, 273 S. C. 646, 258 S. E. (2d) 559 (1979). Moreover, appellants have made no showing a witness was intimidated or coerced by the presence of other witnesses. *State v. Williams*, 226 S. C. 525, 85 S. E. (2d) 863 (1955). We hold the trial judge did not abuse his discretion in refusing to sequester the State's witnesses.

The appellants next assert the trial court erred in permitting the State to recall witnesses, and in limiting the scope of cross-examination. We disagree.

The order of proof during a trial rests in the discretion of the trial judge and no abuse of that discretion is shown here. *State v. Van Williams, et al.*, 212 S. C. 110, 46 S. E. (2d) 665 (1948). Moreover, the trial judge reasoned that during the course of a lengthy trial, the most reasonable presentation of the case justified calling a number of the witnesses at different times with limited cross-examination and allowing full cross-examination at the end of the case.

Appellants content the State's proof was repetitive and, although they have shown no prejudice, they argue it was error to offer too much testimony. This is without merit. The State is empowered to prove its case by all available evidence, and its admissibility is left to the discretion of the trial judge. We find no abuse of discretion by the trial judge. See: *State v. Collins*, 235 S. C. 65, 110 S. E. (2d) 270 (1959).

Appellants argue the trial court erred by referring to the alleged conspiracy as "The Company" because this gave the jury the impression that this was a well-organized group of criminals involved in the smuggling of drugs which gave them a sense of collectiveness and implanted in the minds of the jury the existence of a combination of persons, an essential element of a conspiracy. We disagree.

A number of the defense counsel, counsel for the State and the trial judge referred to the alleged conspiracy as "The Company." This was merely a label used to refer to the alleged conspiracy.

Moreover, the trial judge gave the jury a curative instruction that he was merely referring to the alleged conspiracy as "The Company" and that he did not mean to infer any opinion concerning the facts of the case. This exception is without merit, a curative instruction was given and appellants may not take advantage of error they contributed to at trial. *State v. Faulkner, supra.*

Appellants next assert the trial judge erred in admitting illegally obtained evidence where the State did not lay a proper foundation. They contend their warrantless arrests were illegal, and any evidence seized pursuant thereto should have been suppressed. *United States v. Crews,* 445 U. S. 463, 100 S. Ct. 1244, 63 L. Ed. (2d) 537 (1980).

Appellants Dugan and Schone were arrested at the Dovesville Airport. A search incident to arrest produced driver's licenses from Michigan and/or birth certificates from Ohio. Additionally, miscellaneous pieces of paper with notes thereon and a motel room key were seized.

The arresting officer, Agent Mozingo, had been working undercover and was serving as a lookout when the plane landed and was off-loaded. He arrived at the scene of the landing and immediately arrested the appellants. We conclude there was probable cause for Mozingo to make the warrantless arrests of appellants. An arresting officer may arrest for a misdemeanor without a warrant when the facts and circumstances observed by him give him probable cause to believe a crime has been freshly committed. *State v. Martin,* 275 S. C. 141, 268 S. E. (2d) 105 (1980).

Appellants next contend evidence seized during the search of Room No. 173, Holiday Inn, I-95 and Highway No. 52 in Florence, South Carolina, should have been excluded because the search warrant issued was invalid. We disagree.

The actual warrant obtained by the police has not been reproduced in the record, therefore, the appellants have not supplied an accurate record for our re-

view. *State v. Winstock,* 271 S. C. 473, 248 S. E. (2d) 307 (1978). However, the text of the warrant was discussed by counsel and the trial judge. The record indicates the warrant specifically described the appellants to be searched and provided the search was to locate any and all items tending to establish the identity of all individuals involved in the landing and unloading of a controlled substance, to wit, marijuana at the Dovesville Airport in Darlington County on or about January 17, 1979. We conclude the warrant stated with sufficient particularity the items to be seized, limiting them to matters of identification and as such did not constitute a general search. See: *State v. Jenkins,* 275 S. C. 129, 267 S. E. (2d) 542 (1980).

The appellants next argue the trial judge improperly admitted into evidence a black portfolio which contained money, coins, a notebook telephone pad, a CB radio scanner card, various papers and receipts in the name of Dobbs. After the motel room at the Holiday Inn had been searched by law enforcement officers and locked, these items were found by a motel maid and motel employee. The law relating to unreasonable searches and seizures under the Fourth Amendment applies only to the agents of the government and not to private persons. *Burdeau v. McDowell,* 256 U. S. 465, 41 S. Ct. 574, 65 L. Ed. 1048 (1921); accord: *Stone v. Powell,* 428 U. S. 465, 96 S. Ct. 3037, 49 L. Ed. (2d) 1067 (1976). We conclude the seizure of these items did not violate the appellant's Fourth Amendment rights.

Appellants contend the State failed to disprove that the black portfolio was placed in the room by someone other than the defendant. The trial judge is vested with a wide range of discretion in ruling on the enumerable questions concerning the admissibility of evidence during the course of a trial and his rulings will not be disturbed absent a showing of probable prejudice. *State v. Hutto,* 252 S. C. 36, 165 S. E. (2d) 72 (1968). Appellants argue the State did not lay a proper foundation for the admission of the black portfolio. This is without merit. The trial judge ruled the portfolio was admissible after the State proved the items were found in a motel room previously occupied by the appellants,

the room had been searched by police officers the night before, had been locked after the search and the items were discovered under a mattress the following morning by motel employees.

Moreover, the arguments raised by appellants go toward the weight of the evidence not its admissibility and it was a jury issue whether or not the black portfolio was left in the motel room by the appellants. See also: *State v. Wharton*, 263 S. C. 437, 211 S. E. (2d) 237 (1975).

Appellants finally argue that the trial judge erred in admitting into evidence certain items seized during the search of a 1979 Chrysler automobile and a 1978 Chevrolet van. The affidavit concerning the Chevrolet van and the Chrysler contains sufficient facts and circumstances observed by the officers to establish probable cause. See: *State v. Winborne*, 273 S. C. 62, 254 S. E. (2d) 297 (1979).

All of the appellants' contentions concerning unreasonable searches and seizures and the admissibility of evidence are without merit.

Appellant Dugan asserts the trial court erred in allowing the State to introduce evidence of his refusal to identify himself when he was arrested. Dugan did not make a contemporaneous objection to this evidence, therefore, he waived his right to complain of error on appeal. *State v. Atchison, supra.* Dugan argues his right to remain silent was violated and that *Miranda v. Arizona*, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. (2d) 694 (1966), requires his conviction be reversed. We disagree holding *Miranda* does not apply to routine booking information. See: *State v. Tabory*, 260 S. C. 355, 196 S. E. (2d) 111 (1973); *United States, ex rel. Hines v. La Vallee*, 521 F. (2d) 1109 (2d Cir. 1975), *cert. denied*, 423 U. S. 1090, 96 S. Ct. 884, 47 L. Ed. (2d) 101 (1976).

Moreover, any alleged *Miranda* violation would be harmless error as Dugan later took the witness stand and testified. Moreover, striking the challenged testimony, concerning his refusal to identify himself, from the record would serve no purpose as his guilt is still established

beyond a reasonable doubt. See: *Harryman v. Estelle*, 616 F. (2d) 870, 876 (5th Cir. 1980).

Appellants argue the trial court erred in denying their motions for directed verdicts because the evidence was insufficient to sustain their convictions. We disagree.

Where the sufficiency of evidence is challenged by the defendants' motion for a directed verdict, we must review the evidence in the light most favorable to the State. *State v. Smith*, 274 S. C. 622, 266 S. E. (2d) 422 (1980). There is sufficient evidence in the record to sustain appellants Dugan's, Nichols' and Schone's convictions for conspiracy and possession with intent to distribute. Moreover, on the substantive charge of possession with intent to distribute, we have held that possession may be either actual or constructive and proved by circumstantial evidence. *State v. Owen, et al.*, S. C. 274 S. E. (2d) 510 (1981). There is also sufficient evidence in the record to sustain appellant Jackson's conspiracy conviction. We conclude the trial judge properly denied the motions for directed verdicts.

However, the convictions of Gedra for conspiracy and possession with intent to distribute and the conviction of White for conspiracy must be reversed because there is no competent evidence to susain them.

Appellants finally assert the trial judge erred in imposing sentences which were the result of passion, prejudice, caprice, or vindictiveness. We disagree.

Appellants argue they received harsher sentences than the defendants who entered guilty pleas and were punished for exercising their right to a jury trial. We have reviewed the record and the sentences imposed were within the statutory limit. There is no evidence that the sentences were the result of vindictiveness. See: *State v. Franklin*, 267 S. C. 240, 226 S. E. (2d) 896 (1976).

Reversal of appellant Gedra's conviction makes it unnecessary to address his other exceptions.

The convictions of appellants Dugan, Nichols, Schone and Jackson are affirmed. The convictions of appellants Gedra and White are reversed.

Affirmed in part and reversed in part.

LEWIS, C. J. and HARWELL, J., concur.

LITTLEJOHN and GREGORY, JJ., concur and dissent.

LITTLEJOHN, Justice (concurring and dissenting):

I concur with the majority opinion except as to that portion exonerating defendant George Gedra for lack of competent evidence connecting him to the conspiracy. Having reviewed the course of events which transpired in this conspiracy, as presented at the trial below, I would affirm Gedra's conviction by holding that there was sufficient evidence to require the jury to pass upon Gedra's guilt.

The Darlington County Airport is located near the small community of Dovesville; thus, the airport is commonly called the "Dovesville Airport." Dovesville is situated on U. S. Highway 52 between Darlington and Society Hill. There is a paved main road which runs from Highway 52 into the airport. The airport has a couple of hangars, an office building, and three runways shaped in a triangle with one taxiway. Only one of the runways has lights for night use. No locks, gates or chains secure the entrance to the airport. Vehicles and/or planes may come and go at will.

Defendant Gedra has been the manager of this small community airport for approximately 35 years. On a typical work day, he would arrive about 10:30 a. m. and would leave around 5:00 p. m. He possessed one of only three keys to the airport office, from where the runway lights can be manually operated. Employees Stan White and Robert Stegner had the other two keys. White was tried in connection with this conspiracy and was convicted. I agree with the majority opinion that the evidence presented is insufficient to support his conviction. Neither White nor Stegner were present at the airport when the attempted smuggling and arrests occurred, as both had been removed from the airport premises by sending them to Columbia on an errand.

Agent Mozingo's role in the drug smuggling operation was to maintain surveillance over the airport vicinity in order to detect any activity potentially disruptive to the operation, such as other police activity. On December 11, 1978, Mozingo was told by Sullivan, the "mastermind" behind the conspiracy, that a delivery would occur the following morning. Accordingly, on December 12, Mozingo surveyed the area surrounding the airport in the morning hours between 2:45 and 7:20. Mozingo testified that while he did not hear or see any plane land, he did notice that the runway lights were turned out between 6:00 and 6:45 a. m., an unusual occurrence. Both Mozingo and defendant Etheridge testified that Sullivan said that Gedra was a part of "the Company," and Etheridge further testified that Sullivan said that Gedra had been present at the airport that morning when the alleged delivery occurred on December 12.

The fateful delivery of marijuana finally occurred the morning of January 17, 1979, following numerous postponements. Sullivan told Mozingo that Gedra had been instructed to see that a mobile camper on the airport premises was removed by that date. Law enforcement personnel, continually being informed by Mozingo, were staked out the prior night near the airport. A SLED Agent who was positioned at the airport at 2:00 a. m. testified that someone driving a red pickup arrived at the airport office about 5:15 a. m., went inside, and turned on the office lights. The truck was later identified as Gedra's. Defendant Etheridge testified that he was to telephone the airport office phone and relay a code word in the event any trouble arose.

Mozingo began his surveillance at 5:30 a. m. Thereafter, several vehicles entered the airport, some of which proceeded up and down the runway with their lights off. At approximately 6:15 a. m., Sullivan visited Mozingo, at which time Sullivan said that Gedra was at the airport. When a state helicopter began flying near the airport around 7:55 a. m., Mozingo saw Gedra and Sullivan looking and pointing at it. Mozingo allayed any fears by stating to Sullivan that the helicopter was privately owned. The marijuana-laden plane touched down about

8:15 a. m. Mozingo by radio notified the stationed law enforcement officials. While Gedra furnished the co-pilot with aeronautical charts from his office necessary to return the plane to its original base in Atlanta, a crew of about six men contemporaneously began unloading the marijuana bales from the plane, loading them into trucks, and then vacuuming the plane. At that point, Mozingo moved in and arrested those persons present. The other law enforcement personnel arrived almost simultaneously and began identifying the arrested persons. The majority of those arrested provided false identification.

Not seeing Gedra among those arrested, Mozingo went to the office. The door was locked and a "closed" sign displayed. Having called for Gedra without receiving any response, a SLED official kicked open the door. Following a short search inside, the officials found and arrested Gedra.

Further narration of the events is unnecessary. It is difficult to conceive of this undertaking being planned and effected without full assurance of the cooperation and participation on the part of the airport manager. I am satisfied that the trial judge was justified in denying Gedra's motion for directed verdict and in subsequently allowing the jury to make the ultimate determination of Gedra's involvement. Accordingly, I respectfully dissent from this portion of the majority opinion.

GREGORY, J., concurs.